THOMAS R. WEIL, Trustee for the Thomas R. Weil Trust, Indiv. and on behalf of all others similarly situated, Plaintiff-Appellant, v. NORTHWEST INDUSTRIES, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 87—913

Opinion filed March 8, 1988.

2

Law Offices of Frederic F. Brace, Jr., Holstein, Mack & Dupress, and Marshall Patner, P.C., all of Chicago (Frederic F. Brace, Jr., Keith A. Klopfenstein, and Robert A. Holstein, of counsel), for appellant.

Katten, Muchin & Zavis, of Chicago (Donald E. Egan, Joel G. Chefitz, and Stephen D. Libowsky, of counsel), for appellee Northwest Industries, Inc.

Mayer, Brown & Platt, of Chicago (Alan N. Salpeter and Herbert L. Zarov, of counsel), for appellee Microdot, Inc.

Isham, Lincoln & Beale, of Chicago, and Sullivan & Cromwell, of New York, New York (Don H. Reuben, Thomas F. Ging, Roy B. Underhill, William R. Norfolk, and William Farris, of counsel), for appellee Goldman, Sachs & Company.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff brought this action for restitution and other relief, alleging wrongdoing by corporate fiduciaries in connection with the corporation's sale of one of its businesses. Plaintiff also alleges that this wrongdoing was fraudulently concealed from him until after he had sold his stock and after the corporation merged with another company. The trial court dismissed plaintiff's second amended complaint, ruling that the fiduciary duties owed and allegedly violated by the defendants related only to plaintiff's status as a shareholder and that defendants' alleged breach of their duties resulted in corporate claims rather than personal claims of the shareholders. Plaintiff appeals, arguing that the trial court erred in holding that a former shareholder cannot maintain an action against corporate fiduciaries where the misconduct and resulting damage were fraudulently concealed until after the shareholder sold his stock and after the merger of the corporation into a surviving corporation.

Plaintiff Weil is a former stockholder of defendant Northwest Industries, Inc. He brought this action on behalf of himself and the class of Northwest shareholders; however, the class was never certified. Plaintiff alleges that in 1983 Northwest was considering selling its wholly owned subsidiary, Microdot, Inc. Albert Mendez, a prospective purchaser, communicated to Richard Strubel, Northwest's president, his desire to purchase Microdot for a price approximately equal to its book value of $145 million. During July and August 1983, Strubel and Mendez negotiated over the price for which Microdot could be purchased; Strubel informed Mendez that no offer less than book value would be considered.

In October 1983, Northwest contracted with defendant Goldman, Sachs & Co. to have that company prepare a financial analysis of Microdot in order to determine its fair market value. Defendant John

Roberson, of Goldman, Sachs' Chicago office, was to compile and transmit Microdot's financial information to Goldman, Sachs' New York office; but Roberson never did so. As a result, Goldman, Sachs never completed the valuation of Microdot, and neither Northwest nor plaintiff was advised of Microdot's fair market value. In October 1983, Strubel terminated all communications with Mendez.

On January 4, 1984, Northwest announced that it had sold Microdot in a leveraged buyout to Strubel and his investor group of Microdot executives for $121 million, approximately $24 million less than its fair market value. Northwest took a $24 million write-off on the sale of Microdot, and John Roberson left Goldman, Sachs, to become a director of Microdot.

Northwest's shareholders were not informed that a prospective purchaser was willing to pay book value for the company, nor were they told of Strubel's statement that no offer less than book value would be accepted. On June 26, 1984, plaintiff sold his shares of Northwest on the open market. During July 1985, Northwest was merged into Farley/Northwest Acquisition Corporation and Farley/Northwest Subsidiary Corporation (collectively Farley).

The trial judge dismissed plaintiff's second amended complaint in March 1987, holding that he failed to allege facts indicating that he was bringing an action for personal claims rather than for corporate claims against the defendants. Plaintiff appeals from that order.

Opinion

■ Plaintiff claims that he has been injured by the diminution in the value of his stock as a result of the sale of Microdot for less than its fair market value. In his complaint he alleges conflict of interest, the taking of a corporate opportunity, waste of corporate assets, breach of fiduciary duty and breach of the contract between Northwest and Goldman, Sachs. The trial court dismissed plaintiff's second amended complaint, holding that plaintiff's loss was one which was suffered in common with other shareholders and thus the cause of action belonged to the corporation. A shareholders derivative suit was thus the proper procedure to follow. The trial court relied on *Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, 344 N.E.2d 805, in making its decision.

> "Where there is no showing that plaintiff himself had been injured in any capacity other than in common with his fellow stockholders, the cause of action belongs to the corporation [Citations], and a stockholder may not seek relief on his own behalf. However, this general principle has no application where

the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholder. [Citation.] A suit brought by a stockholder upon a personal claim is by its nature distinguishable from a proceeding to recover damages or other relief for the corporation [Citation.] Not every allegation of wrongdoing is a Simon-pure charge of individual injury, but a court must preliminarily determine if the 'gravamen' of the pleadings states injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole." (36 Ill. App. 3d at 663.)

(See also *Bio-Scientific Clinical Laboratory, Inc. v. Todd* (1986), 149 Ill. App. 3d 845, 501 N.E.2d 192.) Here, the trial court determined that the gravamen of plaintiff's complaint was that his stock suffered in value and that such an injury affected shareholders as a whole.

■ On appeal, plaintiff concedes that the usual remedy for wrongdoing such as been alleged would be a derivative suit; however, because plaintiff no longer owns stock in Northwest, he cannot seek redress for his injury through such a suit. Plaintiff argues that he has sufficiently alleged a personal claim rather than a corporate claim by alleging fraudulent concealment and should be allowed to proceed with his suit.[1]

■ Plaintiff contends that defendants' duty not to fraudulently conceal from the shareholders material facts and causes of action is a duty that is owed directly to shareholders rather than to the corporation. He further contends that defendants' breach of this duty gives him standing to sue. Plaintiff relies on *Merritt v. Colonial Foods, Inc.* (Del. Ch. 1986), 505 A.2d 757, in support of his argument.

In *Merritt*, plaintiffs brought an action against the directors and

---

[1]The trial court applied Illinois law in dismissing plaintiff's second amended complaint. The parties agree that because Delaware law gives shareholders the right to bring a derivative action, Delaware substantive law should apply to questions concerning the duties defendants owe to their corporation (*Pros v. Mid-America Computer Corp.* (1986), 142 Ill. App. 3d 453, 461, 491 N.E.2d 851); however, plaintiff contends that Illinois law should apply to his fraudulent concealment claim, to the extent that Illinois and Delaware law diverge as to the impact that claim has upon his standing to sue. We need not decide which State's law applies, as Illinois and Delaware law are identical on who may maintain derivative actions: in order to bring a shareholders derivative suit, plaintiff must be a shareholder both at the time of the transaction of which he complains and during the pendency of the action. *Lower v. Lanark Mutual Fire Insurance Co.* (1986), 151 Ill. App. 3d 471, 502 N.E.2d 838; *Lewis v. Anderson* (Del. 1984), 477 A.2d 1040.

controlling shareholders of their corporation, challenging the fairness of a cash-out merger which terminated their status as shareholders of the corporation. The merger was instigated by the controlling majority shareholders and was accomplished via a tender offer and without the benefit of independent financial advice. The merger also terminated a derivative action pending in New Jersey State court.

The *Merritt* court first noted that the New Jersey court properly dismissed the derivative suit once the merger had been accomplished, as a cash-out merger terminates the standing of a plaintiff to maintain derivative claims on behalf of the corporation of which he formerly was a shareholder. (505 A.2d at 763 n.3.) The court went on to review the fairness of the merger, and in ruling on the parties' cross-motions for summary judgment, found that defendants had breached their duty of fair dealing with the plaintiff minority shareholders. The court allowed plaintiffs to pursue their class-action challenging the cash-out price and held that the derivative claims could be considered in that litigation, not as derivative claims, "but rather, indirectly, as evidence relevant to the fairness of the cash-out price." 505 A.2d at 766.

■ Plaintiff's reliance on *Merritt* is misplaced, as that case does not address the issues presented in the instant matter. The *Merritt* court allowed a class action challenging a cash-out merger to proceed. Here, plaintiff is challenging Northwest's sale of Microdot, not the merger of Northwest with Farley. Farley, as the successor in interest to Northwest, is the only party which may challenge the actions taken by Northwest fiduciaries when Microdot was sold.

■ Plaintiff admits that Farley may have a cause of action for defendants' wrongdoing, but contends that that fact does not deprive him of his action. Plaintiff's argument is incorrect. The alleged breach of a duty owed to one party does not give that party standing to sue for an alleged breach of a duty owed to another party. Plaintiff may have a cause of action against defendants for fraud, but that does not change the fact that he does not have standing to sue for corporate claims. (Plaintiff sold his stock on the open market prior to disclosure of defendants' alleged wrongdoing with regard to the sale of Microdot. The price he received for his stock was not affected by this disclosure, and it does not appear that he suffered any injury as a result of defendants' alleged breach of duty. Therefore, he may not have even an action for fraud.)

■ Plaintiff also argues that if he is not allowed to bring an action defendants' wrong will go unremedied, as Farley is barred from bringing suit. According to plaintiff, Farley did not pay for the

cause of action when it acquired Northwest stock (because the action was still being concealed), and cannot be regarded as having been wronged by defendants. As noted above, Farley purchased its Northwest stock from Northwest shareholders and not from the wrongdoing fiduciaries. When Farley merged with Northwest, it acquired all of Northwest's assets and liabilities. (*Lewis v. Anderson* (Del. 1984), 477 A.2d 1040.) Farley therefore acquired Northwest's cause of action against defendants for their alleged wrongdoing regarding the sale of Microdot. Farley's choice not to pursue its action does not confer a cause of action upon plaintiff.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN, P.J., and STAMOS, J., concur.