**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant–Appellant,**

v.

**Ida M. GRIFFIN, Jack W. Griffin, David F. Tudor, Anthony Stroinski, Robert E. Sauer, Dorothy M. Sauer, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs–Appellees.**

**No. 06A01–8806–CV–198.**

Court of Appeals of Indiana, First District.

July 27, 1989.

Hugh E. Reynolds, Jr., Julia M. Blackwell, James Dimos, Todd J. Kaiser, Locke Reynolds Boyd & Weisell, Charles W. Linder, Jr., Linder and Hollowell, Indianapolis, Michael J. Andreoli, Donaldson Andreoli & Truitt, Lebanon, for defendant-appellant.

John R. Price, Burroughs & Price, Indianapolis, for plaintiffs-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

United States Fidelity and Guaranty Company (USF & G) appeals the judgment of the trial court awarding former stockholders in the now defunct Carmel Bank and Trust Company (Bank) $997,500 in compensatory damages and $5,000,000 in punitive damages. We reverse.

## FACTS

The present litigation is part of a lengthy and involved factual situation. However, an abbreviated version of the facts will be presented herein, setting forth only those events necessary to our opinion.[1]

The Carmel Bank and Trust Company (Bank) was chartered by the Department of Financial Institutions (DFI) for the State of Indiana in 1973 and began operations in

---

1. For a more complete recitation of the facts underlying this appeal see, *Griffin v. Carmel* *Bank and Trust Co.* (1987), Ind.App., 510 N.E.2d 178, 179–181.

1974. In mid–1976 Larry L. Mohr was elected chairman of the Bank by the board of directors. Several years of advancing unsecured and undersecured loans to officers and directors of the corporation and to individuals associated with these officers and directors followed Mohr's ascendency to the chairmanship. These loans were generally concentrated in a few individuals and corporate entities. Additionally, the Bank surpassed the legal lending limit by loaning out too much of its capital. Several reports resulting from bank examinations conducted by the DFI and by the Federal Deposit Insurance Corporation (FDIC), described the Bank's loan practices as being undesirable and, in some instances, in violation of state and federal banking laws.

The questionable actions of the Bank's officers and directors eventually led the Bank into financial difficulties. Consequently, the owners of majority control in the Bank decided to sell. In early 1985, James O'Neal purchased a controlling interest in the financially troubled bank.

On May 10, 1985, the shareholders filed suit against the Bank, and several former officers and directors of the Bank based on fraud and breach of fidiciary duty. This complaint was later amended to include a claim against O'Neal. On July 10, 1985, the shareholders wrote to O'Neal demanding that the Bank take legal action to collect on claims against Mohr and other former officers and directors of the Bank. On July 17, 1985, O'Neal responded to the shareholders demand. He stated that the board of directors had discussed the matter and decided not to pursue the claims advocated by the shareholders against the former officers and directors.

The Bank was insured under a statutorily required banker's blanket bond and excess employee dishonesty bond issued by USF & G in 1981. The total coverage under the bond was $1,000,000, less $2,500 deductible. The bonds provided fidelity coverage for "loss resulting directly from dishonest or fraudulent acts of an employ-

ee committed alone or in collusion with others." Record at 2833. On June 20, 1985, the Bank forwarded a general liability loss notice along with a copy of the complaint filed by the shareholders to USF & G. The Bank filed a proof of loss with USF & G on August 28, 1985. The shareholders, in their fifth amended complaint, added USF & G as a defendant to the action on January 23, 1986. The complaint alleged that USF & G acted in bad faith in evaluating the Bank's claim for bond proceeds and requested punitive damages in the amount of $5,000,000. USF & G denied the Bank's claims in its answer.

In August of 1986, American Fletcher National Bank (AFNB) acquired Carmel Bank via merger. The Carmel Bank shareholders were offered money for their shares rather than the option of converting their shares of stock. No one formally objected to this process.[2]

The cause went to trial on October 15, 1987. At the close of the shareholders case, USF & G moved for judgment on the evidence. The trial court denied this motion. On November 2, 1987, after an eleven (11) day jury trial, the trial court entered judgment against USF & G awarding the shareholders $997,500 in compensatory damages and $5,000,000 in punitive damages. From this decision, USF & G now appeals.

### ISSUE

The appellant raises several allegations of error on appeal. However, since we reverse, we will address only the following issue:

Did the shareholders have standing to maintain a derivative action against USF & G on behalf of a now non-existent corporate entity?

### DISCUSSION AND DECISION

USF & G contends that the shareholders failed to maintain their status as shareholders in the corporation on whose behalf the derivative suit was instituted and that,

---

**2.** Indiana Code section 23–1–40–3 requires that the board of directors of each corporation party to a merger submit the plan of merger for approval by the shareholders. Under Indiana Code section 23–1–44–8(a)(1) a dissenting shareholder may obtain payment of the fair value of the shareholder's shares in the event of merger.

therefore, the shareholders lost standing to maintain the suit. We agree.

The present appeal raises issues essentially parallel to those raised in *Gabhart v. Gabhart* (1977), 267 Ind. 370, 370 N.E.2d 345. In that case a minority stockholder in a closely held corporation attempted to bring a derivative action against the officers and directors of that corporation. The majority stockholders had devised a plan whereby the corporation would merge with another corporation. After approval of the merger, but prior to the effective date of the merger, the minority shareholder filed a derivative suit. The merger went ahead as planned. The minority shareholder made no allegation that the merger was undertaken for anything other than a legitimate business reason and did not object to the merger pursuant to the statutes protecting the interest of minority shareholders which were in effect at the time. *See* Indiana Code sections 23–1–5–1 *et seq.*, 23–1–7–1.[3]

In responding to certified questions propounded by the United States Court of Appeals for the Seventh Circuit pursuant to Indiana Rules of Procedure, Appellate Rule 15(O), the Supreme Court of Indiana held that shareholders in a merged corporation were generally prohibited from litigating a derivative suit based on the misdeeds of officers and directors of the merged corporation where those shareholders had no interest in the surviving corporation. *Gabhart*, 267 Ind. at 389, 370 N.E.2d at 357. After noting that the assets and liabilities of the merged corporation are transferred to the surviving corporation upon merger and that the shareholder's interest in the merged corporation comes to an end, Justice Prentice stated:

> "If after the merger the shareholder of the merged corporation is not also a shareholder of the surviving corporation, his interest in the merged corporation's cause of action is in the same category as his interest in the other assets of the merged corporation, and the cause of action generally affects only the value of the shareholder's stock for appraisal purposes."

*Id.* at 390, 370 N.E.2d at 357. Therefore, a merger which eliminates the ownership in the corporation's stock also eliminates a former shareholder's standing to sue. *Portnoy v. Kawecki* (7th Cir.1979), 607 F.2d 765, 767; *Kramer v. Western Pacific Industries* (1988), Del., 546 A.2d 348, 354; *Lower v. Lanark Mut. Fire Ins. Co.* (1986), 151 Ill.App. 3rd 471, 473, 104 Ill.Dec. 341, 342, 502 N.E.2d 838, 839; *Lewis v. Anderson* (1984), Del., 477 A.2d 1040, 1047; *Rubinstein v. Catacosinos* (1983), 91 A.D.2d 445, 446, 459 N.Y.S.2d 286, 287, *affirmed*, 60 N.Y.2d 890, 458 N.E.2d 1247, 470 N.Y.S.2d 570. The underlying rationale for the rule is that because a shareholder will receive at least an indirect benefit, in terms of increased shareholder equity, from a corporate recovery, he has adequate interest in vigorously litigating the claims; a nonshareholder may lose incentive to pursue the litigation adequately. *Portnoy*, 607 F.2d at 767; *Lower*, 104 Ill. Dec. at 342, 502 N.E.2d at 839.

The derivative suit presently before this court was filed by the shareholders on May 10, 1985. However, the Bank merged with AFNB in August of 1986. The shareholders in the Bank did not become shareholders in AFNB, the surviving corporation. Therefore, as of August 1986, the shareholder's interest in the Bank's cause of action against USF & G was extinguished except for the indirect effect such an action could have on the value of the shareholder's stock.

As in *Gabhart*, the shareholders herein made no attempt to object to the merger based on undervaluation of their stock. Furthermore, the record reveals that the merger was undertaken for the very legitimate business purpose of keeping the bank afloat. Therefore, we hold that the shareholder's standing to sue USF & G on behalf of the Bank was terminated upon the Bank's merger with AFNB.

The shareholders contend that their suit falls within the equitable exception noted by the Supreme Court in *Gabhart* to the general rule followed herein. Justice Prentice stated:

---

**3.** The present statutory authority allowing dissenting shareholders to object to proposed mergers is Indiana Code sections 23–1–40–3; 23–1–44–8(a)(1).

"[A] Court of Equity may grant relief, pro-rata to a former shareholder, of a merged corporation, whose equity was adversely affected by the fraudulent act of an officer or director and whose means of redress otherwise would be cut off by the merger, if there is no shareholder of the surviving corporation eligible to maintain a derivative action for such wrong and said shareholder had no prior opportunity for redress by derivative action against either the merged or the surviving corporation."

*Gabhart,* 267 Ind. at 392, 370 N.E.2d at 358. The Supreme Court cites no authority supporting this statement other than the equitable maxim that no wrong should be without a remedy.[4] A remedy, however, was available to the shareholders. Assuming without deciding that USF & G was liable to the Bank, the shareholders, as previously noted, were statutorily empowered to demand a price for their shares which reflected the value of the transfer of the Bank's cause of action against USF & G to AFNB, the surviving corporation. The shareholder's neglected to pursue this remedy. The cause of action was transferred to the surviving corporation as an asset of the Bank, and the surviving corporation may now attempt recovery from USF & G if it so desires. Therefore, it is our opinion that the shareholders did not fall within the exception noted by the Supreme Court in *Gabhart.* Having lost shareholder status upon the Bank's merger with AFNB, the former shareholders in the merged corporation lacked standing to maintain the present derivative action.

Reversed.

BAKER and MILLER, JJ., concur.

---

4. We believe that in preserving conditions under which equitable considerations require courts to abandon the general rule that after a merger takes place, former shareholders lose standing to maintain a derivative action on behalf of the merged corporation, the Supreme Court of Indiana was attempting to create an exception where the merger itself is the subject of a claim of fraud. *See Kramer,* 546 A.2d at 354; *Lewis,* 477 A.2d at 1046, n. 10. In the present case, no allegation of fraud regarding the merger was made.

