[No. S139285. Feb. 14, 2008.]

RICHARD GROSSET, Plaintiff, v.
ERIC P. WENAAS et al., Defendants and Respondents;
SIK-LIN HUANG, Intervener and Appellant.

**COUNSEL**

Kreindler & Kreindler, Gretchen M. Nelson; Federman & Sherwood, William B. Federman, Stuart W. Emmons; Law Offices of George A. Shohet and George A. Shohet for Intervener and Appellant.

Steven G. Ingram for Consumer Attorneys of California as Amicus Curiae on behalf of Intervener and Appellant.

Richard M. Buxbaum as Amicus Curiae on behalf of Intervener and Appellant.

Gray Cary Ware & Freidenrich, DLA Piper Rudnick Gray Cary US, DLA Piper US, Robert W. Brownlie, Paul A. Reynolds, Kathryn E. Karcher and Stanley J. Panikowski for Defendants and Respondents.

National Chamber Litigation Center, Robin S. Conrad, Amar D. Sarwal; Morrison & Foerster, Beth S. Brinkman, Seth M. Galanter, Jordan Eth, Judson E. Lobdell and Christopher A. Patz for Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendants and Respondents.

**OPINION**

**BAXTER, J.**—Richard Grosset originally filed this shareholder's derivative action on behalf of JNI Corporation (JNI) against certain of its directors and officers. The complaint sought redress solely for injuries sustained by JNI as a result of defendants' alleged wrongdoing. No recovery was sought for any direct or individual harm to JNI stockholders.

After Grosset lost standing to litigate this matter, the trial court permitted Sik-Lin Huang, another JNI shareholder, to intervene and prosecute the action. Thereafter, around the time the trial court granted a motion to dismiss the derivative complaint, JNI merged with another corporation. As part of the merger, Huang was required to sell his JNI stock to a corporation that became the new sole stockholder of JNI. We granted review to consider the effect of the corporate merger on Huang's standing to pursue the appeal of the adverse trial court judgment.

We hold, as a matter of California law, that Huang lacks standing to continue litigating this derivative action because he no longer owns stock in JNI as a result of the merger. Accordingly, we affirm the Court of Appeal's dismissal of the appeal.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

JNI was incorporated in Delaware and at all relevant times was based in San Diego. JNI designs, manufactures, and markets hardware and software products that connect computer servers to data storage devices to form "storage area networks."

In late 2000 and early 2001, JNI's stock price rose steeply and then fell precipitously. In April 2001, six securities fraud class actions were filed in federal court against JNI and its officers and directors. The district court consolidated these actions and appointed David Osher and others as lead plaintiffs. (See *Osher v. JNI Corp.* (S.D.Cal. 2004) 308 F.Supp.2d 1168, 1176.) In that action, the district court granted JNI's three successive motions to dismiss, finding the *Osher* plaintiffs did not allege sufficient facts establishing that defendants knowingly or recklessly made false or misleading statements. (*Id.* at p. 1197.) Although the Ninth Circuit Court of Appeals recently concluded the last dismissal was properly ordered, it vacated the judgment in part because the district court did not sufficiently explain its denial of leave to amend. (*Osher v. JNI Corp.* (9th Cir. 2006) 183 Fed.Appx. 604 [Fed. Sec. L. Rep. (CCH) ¶ 93, p. 852].)

Meanwhile, in September 2001, former plaintiff Richard Grosset initiated the instant derivative action on behalf of JNI against nine JNI directors and

---

[1] These background facts have been taken largely from the Court of Appeal opinion and from documents appended to the parties' motions for judicial notice filed in the Court of the Appeal.

officers. When Grosset subsequently sold his JNI stock, the trial court permitted Sik-Lin Huang, a JNI stockholder, to intervene and continue this litigation.

Huang's complaint in intervention alleges causes of action against defendants for breach of fiduciary duty, waste of corporate assets, gross mismanagement of JNI, and insider trading in connection with a secondary offering by JNI. Recovery is sought solely on behalf of JNI, in the form of compensation for the corporate damages caused by defendants' conduct, statutory damages, and an award of costs and disbursements, including reasonable attorney and expert fees.

In September 2002, JNI's board of directors (the Board) created a special litigation committee (the SLC) to investigate the allegations in the derivative complaint and to determine whether Huang's derivative action would further JNI's best interests. JNI appointed the Honorable Howard Wiener (retired) and Admiral Leon "Bud" Edney (retired) to the Board and to serve as the members of the SLC. Justice Wiener and Admiral Edney had no prior relationships with JNI or any of the defendants, no prior business dealings with JNI, and owned no JNI stock. They retained separate counsel to assist the SLC in its investigation.

To fulfill its mission, the SLC reviewed the allegations and causes of action in the derivative complaint, including the public statements challenged in the federal securities class action. The SLC researched the applicable law and conducted over 60 hours of interviews with JNI employees, auditors, and attorneys knowledgeable about the relevant events. Thousands of pages of documents were reviewed, including JNI's press releases in 2000 and 2001, internal corporate documents, public offering documents, Securities and Exchange Commission filings, analyst reports, industry reports, and historical stock information for JNI and its competitors. The SLC also heard presentations from each side in this matter, and reviewed materials provided by Huang's attorneys in support of the derivative claims.

Based on its investigation, the SLC issued a 64-page report concluding the derivative claims lacked merit and would likely not be successful. The SLC determined, inter alia, that the steep rise and fall of JNI's stock price was caused by a confluence of events in the marketplace, and not by a contrived scheme of false and misleading statements on the part of the directors and management to promote JNI's stock solely for personal profit. Thus, pursuing the derivative action would not be in JNI's best interests.

Armed with its report, the SLC filed a motion to dismiss the derivative complaint. After conducting discovery with court leave, Huang filed an opposition that disputed the independence, adequacy, and reasonableness of the SLC's membership, investigation, and conclusions. Ultimately, the trial court rejected Huang's challenges to the SLC and its report and dismissed the derivative complaint with prejudice.

Before Huang filed his appeal of the judgment in defendants' favor, the stockholders of JNI voted to approve a merger. Pursuant to the merger, a wholly owned subsidiary of Applied Micro Circuits Corporation (AMCC) merged with and into JNI, and JNI continued as the surviving company. Upon the merger's consummation, AMCC purchased all outstanding shares of JNI stock, and JNI became a wholly owned subsidiary of AMCC. Defendants subsequently moved to dismiss Huang's appeal on the ground he had no standing to pursue the litigation after selling his JNI stock in the merger.

The Court of Appeal heard defendants' motion to dismiss in conjunction with the appeal. Upon finding that Huang lacked standing to continue the action, the court dismissed the appeal without addressing its merits.

We granted Huang's petition for review.

## DISCUSSION

As indicated, Huang lost his JNI stock as a result of a merger transaction. The central issue is whether Huang's loss of status as a JNI stockholder deprived him of standing to pursue this derivative action on JNI's behalf.

The Court of Appeal determined that the law of the state of incorporation governs this issue, because the requirements for standing implicate the internal affairs of a corporation.[2] JNI was incorporated in Delaware, where the law indisputably requires a plaintiff who brings an action on behalf of a corporation to maintain continuous stock ownership in the corporation throughout the action's pendency. Applying Delaware law, the court concluded that Huang's loss of his JNI stock as part of the merger resulted in his

---

[2] The term "internal affairs" refers to matters that involve "the relations inter se of the corporation, its shareholders, directors, officers or agents." (Rest.2d Conf. of Laws, § 302, com. a, p. 307.) A conflict of laws principle known as the "internal affairs doctrine" posits that only one state—usually the state of incorporation—should have the authority to regulate a corporation's internal affairs. (See *Edgar v. MITE Corp.* (1982) 457 U.S. 624, 645 [73 L.Ed.2d 269, 102 S.Ct. 2629].)

loss of standing to maintain the appeal of this action. The court proceeded to find, in the alternative, that because California law imposes a continuous ownership requirement that parallels Delaware law, Huang lacks standing in any event.

Huang disputes this reasoning. He claims that California does not have a continuous stock ownership requirement, and that a former shareholder may maintain a derivative action in this state so long as the individual satisfies section 800 of the Corporations Code[3] by owning stock in the corporation at the time of the alleged wrongdoing and at the time the action was filed.[4] Huang argues that, given this material conflict between California law and Delaware law, the former should apply because California has a stronger interest than Delaware in regulating the matter. In particular, he notes, JNI is headquartered in California, the defendant officers and directors reside in this state, and all of the acts and transactions forming the basis of the derivative claims occurred here. Claiming he satisfies California's standing requirements, Huang urges reversal of the Court of Appeal judgment.

As both parties recognize, this case potentially raises a conflict of laws issue. If we find, however, that the Court of Appeal correctly determined both Delaware and California require a plaintiff to maintain continuous stock ownership throughout the litigation of a derivative action, then there is no material conflict and we must uphold the dismissal of Huang's appeal. (See *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 920 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) But if we conclude that Delaware law imposes this requirement while California law does not, we must then analyze the governmental interests of the two states, including the effect of the internal affairs doctrine, to determine which state's law ought to apply. (See *ibid.*)

## A. *Corporation Law and Shareholder Litigation: Basic Principles*

Before addressing the stock ownership requirements of Delaware and California law, we review several basic principles relating to corporation law and shareholder litigation.

---

[3] All further statutory references are to this code unless otherwise indicated.

[4] Although not at issue here, section 800 also provides that a complaint in a derivative action must contain allegations that the plaintiff shareholder first informed the directors of the ultimate facts of each cause of action and made a reasonable effort to induce them to commence suit themselves or otherwise redress the wrong, or allegations establishing that such efforts would have been futile or useless. (§ 800, subd. (b)(2); see *Eggers v. National Radio Co.* (1929) 208 Cal. 308, 313–314 [281 P. 58].)

■ It is fundamental that a corporation is a legal entity that is distinct from its shareholders. (*Merco Constr. Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 729 [147 Cal.Rptr. 631, 581 P.2d 636].) The authority to manage the business and affairs of a corporation is vested in its board of directors, not in its shareholders. (§ 300, subd. (a); *Granite Gold Min. Co. v. Maginness* (1897) 118 Cal. 131, 138 [50 P. 269].) This includes the authority to commence, defend, and control actions on behalf of the corporation. (See generally 2 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 2007) § 290, p. 14-6 (Ballantine & Sterling); e.g., *A. Paladini, Inc. v. Superior Court* (1933) 218 Cal. 114, 121 [21 P.2d 941].)

Because a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it. The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so. When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensable party and must be joined as a nominal defendant. (See generally Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2007) ¶¶ 6:602 to 6:603, 6:611, pp. 6-131, 6-134; 2 Ballantine & Sterling, *supra,* § 291.02, pp. 14-7 to 14-8.)

■ An action is deemed derivative " 'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' " (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106 [81 Cal.Rptr. 592, 460 P.2d 464].)[5] When a derivative action is successful, the corporation is the only party that benefits from any recovery; the shareholders derive no benefit " 'except the indirect benefit resulting from a realization upon the corporation's assets.' " (*Jones,* at p. 107.)

B. *Delaware Law*

■ The parties do not dispute that Delaware imposes two stock ownership requirements for standing in a derivative action. The Delaware General Corporation Law provides: "In any derivative suit instituted by a stockholder

---

[5] "Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of the other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity." (*Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 530 [170 P.2d 898]; see *Anderson v. Derrick* (1934) 220 Cal. 770, 773–774 [32 P.2d 1078].)

of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law." (Del. Code, tit. 8, § 327.) Delaware Court of Chancery Rules of Court, rule 23.1 similarly specifies: "In a derivative action . . . the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law. . . ." The purpose of this first requirement for "contemporaneous ownership" is to prevent so-called strike suits, whereby stock in a corporation is purchased with "purely litigious motives," that is, "for the sole purpose of prosecuting a derivative action to attack transactions" that occurred before the stock purchase. (*Alabama By-Products v. Cede & Co.* (Del. 1995) 657 A.2d 254, 264, fn. 12 (*Alabama By-Products*); see *Agostino v. Hicks* (Del.Ch. 2004) 845 A.2d 1110, 1117, fn. 16.)

The Delaware courts have construed the foregoing legislation and rule as further requiring that the derivative plaintiff retain stock ownership for the duration of the litigation. (*Lewis v. Anderson* (Del. 1984) 477 A.2d 1040, 1046 (*Lewis*); see *Kramer v. Western Pacific Industries* (Del. 1988) 546 A.2d 348, 354 (*Kramer*), citing *Lewis, supra,* 477 A.2d 1040.) This second requirement, for "continuous ownership" of stock, is consistent with general principles of corporation law and stems from the recognition that, ordinarily, the decision to pursue a claim on behalf of a corporation is entrusted to the board of directors as within the ambit of its authority to manage the corporation's affairs. (*Alabama By-Products, supra,* 657 A.2d at p. 265.) The rationale for permitting a shareholder to maintain a derivative suit on a corporation's behalf, and thereby intrude upon a board's authority, is that his or her "status as a shareholder provides an interest and incentive to obtain legal redress for the benefit of the corporation." (*Ibid.*) But "[o]nce the derivative plaintiff ceases to be a stockholder in the corporation on whose behalf the suit was brought, he no longer has a financial interest in any recovery pursued for the benefit of the corporation." (*Ibid.*) Like the contemporaneous ownership rule, the continuous ownership rule aims to "prevent the abuses frequently associated with a derivative suit." (*Id.* at p. 264, relying on *Lewis, supra,* 477 A.2d at p. 1046.)

Significantly, Delaware views the continuous ownership requirement as "fully applicable to a question of post-merger standing to carry on a

derivative suit." (*Lewis, supra,* 477 A.2d at p. 1046.) Thus, "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit." (*Id.* at p. 1049.)

Delaware recognizes two limited exceptions to the requirement of continuous ownership as applied to mergers. A plaintiff who loses stock in a corporation as a result of a merger may nonetheless possess standing to pursue a derivative action: (1) where the merger itself is the subject of a claim of fraud, perpetrated merely to deprive shareholders of the standing to bring a derivative action; or (2) where the merger is in reality merely a reorganization that does not affect the plaintiff's ownership in the business enterprise. (*Lewis v. Ward* (Del. 2004) 852 A.2d 896, 902.) Huang does not contend there are facts bringing this case within either exception.

### C. *California Law*

Like Delaware, California has a statute that imposes stock ownership requirements for standing to pursue a shareholder's derivative suit. As relevant here, section 800, subdivision (b)(1) (section 800(b)(1)) provides: "No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares . . . unless . . . : [¶] (1) The plaintiff alleges in the complaint that plaintiff was a shareholder, of record or beneficially . . . at the time of the transaction or any part thereof of which plaintiff complains or that plaintiff's shares . . . thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of . . . ."[6]

---

[6] Section 800(b)(1) provides in full: "No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares or of voting trust certificates of the corporation unless both of the following conditions exist: [¶] (1) The plaintiff alleges in the complaint that plaintiff was a shareholder, of record or beneficially, or the holder of voting trust certificates at the time of the transaction or any part thereof of which plaintiff complains or that plaintiff's shares or voting trust certificates thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of; provided, that any shareholder who does not meet these requirements may nevertheless be allowed in the discretion of the court to maintain the action on a preliminary showing to and determination by the court, by motion and after a hearing, at which the court shall consider such evidence, by affidavit or testimony, as it deems material, that (i) there is a strong prima facie case in favor of the claim asserted on behalf of the corporation, (ii) no other similar action has been or is likely to be instituted, (iii) the plaintiff acquired the shares before there was disclosure to the public or to the plaintiff of the wrongdoing of which plaintiff complains, (iv) unless the action can be maintained the defendant may retain a gain derived from defendant's willful breach of a fiduciary duty, and (v) the requested relief will not result in unjust enrichment of the corporation or any shareholder of the corporation . . . ." (§ 800(b)(1).)

"The 'operation of law' exception to section 800" "implies the absence of voluntary action and, therefore, courts generally do not regard mergers and consequent transfers of stock to be

■ While section 800(b)(1) is in many ways comparable to Delaware's section 327, there are some noteworthy differences. One significant difference is that, in contrast to the Delaware law, section 800(b)(1)'s contemporaneous ownership requirement will not defeat standing in certain circumstances where the defendant would otherwise be able to retain a gain from a willful breach of fiduciary duty and where the plaintiff became a shareholder before disclosure of the alleged wrongdoing. (Compare § 800(b)(1) with Del. Code, tit. 8, § 327; see *7547 Partners v. Beck* (Del. 1996) 682 A.2d 160, 163.)

Another potentially significant difference is that the introductory language of section 800, subdivision (b) (section 800(b)) states in pertinent part that "[n]o action may be instituted *or maintained* in right of any . . . corporation by any holder of shares . . . of the corporation . . ." unless conditions such as the contemporaneous stock ownership requirement are met. (Italics added.) The phrase "instituted *or maintained*" (italics added) appears on its face to be more restrictive than the sole term "instituted" used in Delaware's legislation (Del. Code, tit. 8, § 327), and it seems to imply that only a shareholder may initiate or maintain a derivative action. (§ 800(b); see 2 Model Bus. Corp. Act Ann. (3d ed. with 2005 supp.) com. to § 7.41, pp. 7-332 to 7-333 [official comment interpreting "commence or maintain" language in § 7.41 of the Model Bus. Corp. Act];[7] *Grace Bros. v. Farley Indus.* (1994) 264 Ga. 817 [450 S.E.2d 814, 816] [interpreting "commenced or maintained" language in Georgia statute].)

No California decision has construed the "instituted or maintained" language as requiring a plaintiff to maintain continuous stock ownership throughout litigation of a derivative action. There are, however, two

---

'by operation of law.' " (Note, *The Continuous Ownership Requirement: A Bar to Meritorious Shareholder Derivative Actions?* (1986) 43 Wash. & Lee L.Rev. 1013, 1027, fn. 85 (*Continuous Ownership Requirement*).)

[7] Section 7.41 of the American Bar Association's Model Business Corporation Act, entitled "Standing," currently provides: "A shareholder may not *commence or maintain* a derivative proceeding unless the shareholder: [¶] (1) was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time; and [¶] (2) fairly and adequately represents the interests of the corporation in enforcing the right of the corporation." (2 Model Bus. Corp. Act Ann., § 7.41, as amended in 1990, italics added; see 44 Bus. Law. 543 [proposing amendment]; 45 Bus. Law. 1241 (1990) [adopting amendment].) The official comment to this section explains in relevant part: "The introductory language of section 7.41 *refers both to the commencement and maintenance of the proceeding* to make it clear that the proceeding should be dismissed if, after commencement, *the plaintiff ceases to be a shareholder* or a fair and adequate representative. The latter would occur, for example, if the plaintiff were using the proceeding for personal advantage." (2 Model Bus. Corp. Act Ann., *supra*, com. to § 7.41, p. 7-333, italics added.) As the comment indicates, maintaining continuous stock ownership is a requirement that is distinct from the fair and adequate representation requirement.

decisions—*Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119 [214 Cal.Rptr. 177] (*Heckmann*) and *Gaillard v. Natomas Co.* (1985) 173 Cal.App.3d 410 [219 Cal.Rptr. 74] (*Gaillard*)—that have stated opposite conclusions regarding the matter of continuous ownership.

In *Heckmann, supra,* 168 Cal.App.3d 119, stockholders in Walt Disney Productions (Disney) filed a shareholder's derivative suit against the Disney directors and a group of former Disney stockholders known collectively as the Steinberg Group. The plaintiffs alleged that, in the course of a takeover attempt, the Steinberg Group breached fiduciary duties to Disney and other Disney stockholders when, among other things, it initiated and then abandoned a shareholder's derivative action in federal court in order to obtain a premium price for the Disney shares it resold to the defendants. Noting the Steinberg Group's abandonment of the federal derivative action, *Heckmann* concluded: "Once a derivative plaintiff sells its stock, it no longer has standing to prosecute the derivative claims on behalf of the remaining shareholders. (See *Lewis* v. *Knutson* (5th Cir. 1983) 699 F.2d 230, 238 and cases cited therein; 7A Wright & Miller, Federal Practice and Procedure (1972) § 1839, p. 437.)" (*Heckmann, supra,* 168 Cal.App.3d at p. 130.)

Although the *Heckmann* court acknowledged the continuous stock ownership requirement, the standing of the plaintiffs in that case was not at issue and there was no merger-related stock sale like the one here. Instead, the court made the quoted statement in analyzing whether the defendants had breached a fiduciary duty by filing and then abandoning the federal derivative action. (See *Heckmann, supra,* 168 Cal.App.3d at p. 130.) Given this context, and the brevity of its discussion, we do not view *Heckmann* as either convincing or dispositive on the matter.

Without mentioning the *Heckmann* decision, *Gaillard, supra,* 173 Cal.App.3d 410, held that a plaintiff is not required to maintain continuous stock ownership in order to pursue a derivative action in California. In that case, a common stockholder of Natomas Company (Natomas) challenged " 'golden parachute' " agreements and other benefits provided for certain corporate officers and directors when Natomas merged with Diamond Shamrock Corporation. (*Id.* at p. 413.) Although the plaintiff had filed the derivative action before the merger became effective, she subsequently had to exchange her Natomas stock for common stock in a third corporation that had been formed for purposes of the merger. After the merger, the defendants contended the plaintiff lost standing to proceed with the derivative action because she no longer owned stock in Natomas. (*Ibid.*)

*Gaillard* declined to construe section 800(b)'s "instituted or maintained" language as requiring continuous ownership of stock throughout a derivative

lawsuit. Instead, it found that the term " 'maintained' " was intended to "allow one who, by operation of law, becomes an owner of shares which already are the basis of a derivative action, to continue that litigation." (*Gaillard, supra,* 173 Cal.App.3d at p. 415.) Upon determining that section 800(b) requires only contemporaneous ownership and ownership at the time the action is filed, *Gaillard* held the plaintiff there had standing to proceed with the derivative action because she had met these particular requirements. (*Gaillard, supra,* 173 Cal.App.3d at pp. 414–417.)

Even assuming section 800(b)'s "instituted or maintained" language reasonably includes a plaintiff whose shares devolved on him or her by operation of law after the filing of a derivative action, nothing in the statutory language or history purports to limit its application to that singular circumstance. Indeed, as indicated above, a comparable provision of section 7.41 of the Model Business Corporation Act with very similar language ("commence or maintain") has been construed as clarifying that dismissal of a derivative action is required "if, after commencement [of the action], the plaintiff ceases to be a shareholder . . . ." (2 Model Bus. Corp. Act Ann., *supra,* com. to § 7.41, p. 7-333; for full text, see, *ante,* fn. 7; see also *Grace Bros. v. Farley Indus., supra,* 450 S.E.2d at p. 816 [same for Georgia statute].)[8]

Viewing the statutory terms in context, we observe that paragraphs (1) and (2) of section 800(b) serve to identify what a plaintiff must allege in a complaint to establish standing in a shareholder's derivative action. (See, *ante,* fns. 4, 6.) Given this circumstance, the failure to explicitly address an issue that might later arise during the pendency of an action, such as the loss of the plaintiff's stock, is hardly surprising. Moreover, we have reviewed the available legislative history of section 800, and find that nothing in its history, just as nothing in its text, indicates that the Legislature rejected a continuous ownership requirement, or that construing the statute to include such a requirement would be contrary to legislative intent.

Our review of the statutory language and history leads us to conclude that, while section 800(b) seems to point to a continuous ownership requirement,

---

[8] Interestingly, *Gaillard* made the observation that, after the predecessor to section 800 was adopted, subsequent amendments to the statute were patterned in part after the Model Business Corporation Act. (*Gaillard, supra,* 173 Cal.App.3d at p. 415.) But *Gaillard* quoted the 1975 version of the model act, which simply provided: " 'No actions *shall be brought* . . . by a shareholder in the right of a domestic or foreign corporation unless the plaintiff was a holder of record of shares . . . at the time of the transaction of which he complains, or his shares . . . thereafter devolved upon him by operation of law from a person who was a holder of record at such time.' " (*Gaillard, supra,* 173 Cal.App.3d at p. 415, fn. 5, original italics omitted, new italics added.) In 1990, the model act was amended to include the current "commence or maintain" language, which as the official comment explains, was intended to clarify that continuous stock ownership is a requirement for standing. (See, *ante,* fn. 7.)

the "instituted or maintained" language does not clearly impose it. Nonetheless, other considerations ultimately support this interpretation of the statute. Not only does a requirement for continuous ownership further the statutory purpose to minimize abuse of the derivative suit, but the basic legal principles pertaining to corporations and shareholder litigation all but compel it.

To reiterate: the authority to manage a corporation's affairs generally resides in its board of directors, not its stockholders. Thus, the decision to pursue a claim on a corporation's behalf falls squarely within the authority vested in the corporate board. The fundamental purpose of a derivative action is to provide a means by which a stockholder may seek to enforce the rights of a corporation when the corporate board refuses to do so. (*Jones v. H. F. Ahmanson & Co., supra,* 1 Cal.3d at p. 106; *Schilling v. Belcher* (5th Cir. 1978) 582 F.2d 995, 1001.) If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it. (*Jones v. H. F. Ahmanson & Co., supra,* 1 Cal.3d at pp. 106–107; *Alabama By-Products, supra,* 657 A.2d at p. 265.) Because a derivative claim does not belong to the stockholder asserting it, standing to maintain such a claim is justified only by the stockholder relationship and the indirect benefits made possible thereby, which furnish the stockholder with an interest and incentive to seek redress for injury to the corporation. (See *Jones v. H. F. Ahmanson & Co., supra,* 1 Cal.3d at p. 107; *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 16 [108 P.2d 906] ["the stockholder's ultimate interest in the corporation is sufficient to justify the bringing of" a derivative action]; *Christopher v. Liberty Oil & Gas Corp.* (La.Ct.App. 1995) 665 So.2d 410, 411.) Once this relationship ceases to exist, the derivative plaintiff lacks standing because he or she "no longer has a financial interest in any recovery pursued for the benefit of the corporation." (*Alabama By-Products, supra,* 657 A.2d at p. 265; see *Christopher v. Liberty Oil & Gas Corp., supra,* 665 So.2d at p. 411; *U.S. Fidelity and Guar. Co. v. Griffin* (Ind.Ct.App. 1989) 541 N.E.2d 553, 555.) As one court put it, allowing a plaintiff to retain standing despite the loss of stock ownership would produce "the anomalous result that a plaintiff with absolutely no 'dog in the hunt' is permitted to pursue a right of action that belongs solely to the corporation." (*Timko v. Triarsi* (Fla.Dist.Ct.App. 2005) 898 So.2d 89, 91.)

■ Notably, the vast majority of other jurisdictions that have considered the issue require continuous stock ownership for standing to maintain a derivative lawsuit.[9] Contrary to Huang's suggestion, the widespread recognition of a continuous ownership requirement cannot be attributed to materially

---

[9] (E.g., *Timko v. Triarsi, supra,* 898 So.2d 89 [Florida law]; *Grace Bros. v. Farley Indus., supra,* 450 S.E.2d 814 [Georgia law]; *U.S. Fidelity and Guar. Co. v. Griffin, supra,* 541 N.E.2d 553 [Indiana law]; *A-Plus Janitorial v. Employers' WCA* (1997) 1997 OK 37 [936 P.2d 916] [Oklahoma law]; *Christopher v. Liberty Oil & Gas Corp., supra,* 665 So.2d 410 [Louisiana law]; *Bronzaft v. Caporali* (N.Y.Sup.Ct. 1994) 162 Misc.2d 281 [616 N.Y.S.2d 863] [New York

different legislation. Virtually all of these other jurisdictions have statutes that explicitly refer only to contemporaneous stock ownership. (E.g., Del. Code, tit. 8, § 327 [general corporation law chapter of corporations code]; Fed. Rules Civ.Proc., rule 23.1, 28 U.S.C.) That these jurisdictions also require continuous ownership, despite having legislation that fails to expressly provide for it, confirms our view that the requirement is sound.[10] Consistent with the majority rule, and with the basic principles that govern corporation law and shareholder litigation, we hold that section 800(b) is properly construed as containing a continuous ownership requirement.

Intervener Huang suggests that a rule of continuous ownership is inappropriate for cases where, as here, the plaintiff's loss of stock results from a merger and thus is involuntary. We do not agree. As discussed, standing to assert a claim on a corporation's behalf is justified because of the stockholder relationship, which furnishes the interest and incentive for a stockholder to seek redress for the claimed corporate injury. (See *Jones v. H. F. Ahmanson & Co., supra,* 1 Cal.3d at p. 107; *Christopher v. Liberty Oil & Gas Corp., supra,* 665 So.2d at p. 411.) Consequently, when the stockholder relationship is terminated, either voluntarily or involuntarily, a derivative plaintiff loses standing because he or she no longer has even an indirect interest in any recovery pursued for the corporation's benefit. (*Alabama By-Products, supra,* 657 A.2d at p. 265.) Put another way, "[p]laintiffs who lose their shares involuntarily have no greater interest in the continued well-being of a

---

law]; *Weil v. Northwest Industries, Inc.* (1988) 168 Ill.App.3d 1 [118 Ill.Dec. 717, 522 N.E.2d 172, 174, fn. 1] [Illinois law]; *Kramer, supra,* 546 A.2d 348 [Delaware law]; *Metal Tech Corp. v. Metal Teckniques Co.* (1985) 74 Ore.App. 297 [703 P.2d 237] [adopting the contemporaneous and continuous ownership rules in Oregon as a matter of general principle in the absence of statutory rules so requiring]; *Lewis v. Knutson, supra,* 699 F.2d 230 [Fed. Rules Civ.Proc., rule 23.1, 28 U.S.C.]; *Niesz v. Gorsuch* (9th Cir. 1961) 295 F.2d 909 [Arizona law]; but see *Warden v. McLelland* (3d Cir. 2002) 288 F.3d 105 [Pennsylvania statute expressly excuses continuous ownership requirement where loss of shares during pendency of derivative lawsuit results from corporate action in which the holder did not acquiesce]; *Alford v. Shaw* (1990) 327 N.C. 526 [398 S.E.2d 445] [relying on *Gaillard, supra,* 173 Cal.App.3d 410, in declining to read continuous ownership requirement into North Carolina statute, but also observing the facts of that case fit within the settled fraudulent merger exception that other jurisdictions recognize]; see generally *Continuous Ownership Requirement, supra,* 43 Wash. & Lee L.Rev. at p. 1015.)

[10] Huang argues the cases involving rule 23.1 of the Federal Rules of Civil Procedure are inapt because that rule contains a provision requiring a derivative plaintiff to "fairly and adequately represent" the interests of similarly situated shareholders (Fed. Rules Civ.Proc., rule 23.1(a), 28 U.S.C.), whereas section 800 does not. While we agree the lack of a proprietary interest logically bears on the question of fair and adequate representation, we reject the implication that section 800's failure to expressly state a fair and adequate representation requirement reflects any intent on the part of our Legislature to secure the standing of a derivative plaintiff who, for whatever reason, cannot provide fair and adequate representation. Moreover, as noted previously, maintaining continuous stock ownership is reasonably viewed as a requirement that is distinct from the fair and adequate representation requirement. (See, *ante,* fn. 7.)

corporation than plaintiffs who willingly sell their shares. Neither class of plaintiff retains a proprietary interest in the corporate enterprise." (*Hantz v. Belyew* (11th Cir. 2006) 194 Fed.Appx. 897, 899.)

Huang next contends we should construe section 800 consistent with the analysis in *Gollust v. Mendell* (1991) 501 U.S. 115 [115 L.Ed.2d 109, 111 S.Ct. 2173] (*Gollust*). In *Gollust,* the United States Supreme Court declined to read a continuous ownership requirement into section 16(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78p(b)), which imposes a rule of strict liability on corporate directors, officers, and other so-called insiders for their short-swing profits.[11] Section 16(b) represents a " 'flat rule . . . taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great.' " (*Gollust, supra,* 501 U.S. at p. 121.) In reviewing the statutory definitions identifying the class of permissible plaintiffs, *Gollust* discerned congressional intent "to grant enforcement standing of considerable breadth" and a "policy of lenient standing" that allows any security holder, not just a stockholder, to prosecute an action.[12] (*Gollust,* at pp. 122, 127.) The opinion observed: "The only textual restrictions on the standing of a party to bring suit under § 16(b) are that the plaintiff must be the 'owner of [a] security' of the 'issuer' at the time the suit is 'instituted.' " (*Id.* at pp. 122–123.)

Because it could discern no requirement of continuous ownership from either the text or the history of section 16(b) of the Securities Exchange Act of 1934, *Gollust, supra,* 501 U.S. 115, concluded that, once a plaintiff security holder satisfies the ownership requirement for initiating a suit, the holder must merely maintain some financial interest in the outcome of the litigation sufficient to motivate its prosecution and avoid constitutional standing difficulties. (*Id.* at pp. 124–127.) In that case, the plaintiff satisfied all of these requirements because he owned a security (stock) of the issuer at the time he instituted the action. Moreover, he retained standing under article III of the federal Constitution to maintain the suit after a merger in which he lost

---

[11] Section 16(b) of the Securities Exchange Act of 1934 provides in relevant part that a "[s]uit to recover [an insider's] profit may be instituted . . . by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. . . ." (15 U.S.C. § 78p(b).)

[12] Thus, section 16(b) of the Securities Exchange Act of 1934 authorizes any owner of a "security" of the issuer—including a bondholder as well as a stockholder (see *Gollust, supra,* 501 U.S. at p. 127)—to enforce the insider trading ban. In contrast, section 800(b)(1) restricts standing to initiate or maintain any derivative action to record or beneficial shareholders of a corporation.

his stock in the issuer in exchange for cash and stock in the issuer's new parent corporation and sole stockholder, because he retained a continuing financial interest in the litigation's outcome derived from his stock in the parent corporation. (*Gollust, supra,* 501 U.S. at pp. 127–128.)

*Gollust, supra,* 501 U.S. 115, does not aid Huang's position for several reasons. First, *Gollust* did not purport to cast doubt on the judicially recognized continuous ownership requirement for ordinary derivative actions subject to Federal Rules of Civil Procedure, rule 23.1 (28 U.S.C.), which also omits express reference to continuous ownership. Second, while refusing to read a continuous ownership requirement into section 16(b) of the Securities Exchange Act of 1934, the high court explained that a plaintiff must nonetheless maintain a personal stake in the outcome of the litigation throughout its course to avoid article III jurisdictional problems. Although article III of the federal Constitution does not apply in state courts,[13] *Gollust*'s concerns over permitting a security holder to maintain a section 16(b) action after he or she has "lost any financial interest in its outcome" (*Gollust, supra,* 501 U.S. at p. 125) are consistent with those underlying the majority rule depriving a derivative plaintiff of standing where, as here, his or her interest in the litigation is completely extinguished in a stock-for-cash merger (see *Bronzaft v. Caporali, supra,* 162 Misc.2d at pp. 284–287; *U.S. Fidelity and Guar. Co. v. Griffin, supra,* 541 N.E.2d at p. 555; see *Alabama By-Products, supra,* 657 A.2d at pp. 265–266). Finally, nothing in *Gollust* supports Huang's suggestion that a potential attorney fee recovery provides a plaintiff sufficient financial interest in the outcome of a derivative action for purposes of standing. Indeed, we remain mindful that stock ownership restrictions originally developed because "[i]n many instances the interest of the plaintiff was nominal and the interest of the plaintiff's attorney substantial," thus rendering the derivative suit "susceptible to abuse." (2 Model Bus. Corp. Act Ann., *supra,* historical background, foll. § 7.40, p. 7-255.)

■ Huang's other arguments also are unavailing. Unlike Huang, we do not view the Legislature's lack of a response to *Gaillard, supra,* 173 Cal.App.3d 410, as signifying rejection of a continuous ownership requirement. As a principle of statutory construction, legislative inaction is a "slim reed upon which to lean." (*Quinn v. State of California* (1975) 15 Cal.3d 162, 175 [124 Cal.Rptr. 1, 539 P.2d 761].) In any case, we note *Gaillard* expended

---

[13] Article III of the federal Constitution imposes a "case-or-controversy limitation on federal court jurisdiction," requiring " 'the party requesting standing [to allege] "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." ' " (*Gollust, supra,* 501 U.S. at pp. 125–126.) There is no similar requirement in our state Constitution. (*National Paint & Coatings Assn. v. State of California* (1997) 58 Cal.App.4th 753, 761 [68 Cal.Rptr.2d 360].)

considerable effort in distinguishing the facts before it from the facts in other cases adhering to the majority rule that loss of stock ownership ordinarily deprives a derivative plaintiff of standing. (See *Gaillard, supra,* 173 Cal.App.3d at pp. 417–418, 421.) Because *Gaillard* cannot be read as rejecting the majority rule in all its various applications, the Legislature's inaction is at best ambiguous.

Huang also argues that requiring continuous ownership would be unfair where, as here, a stockholder who litigated a derivative action for several years through the pleading and discovery stages, and who thereby incurred sizeable monetary obligations, would be precluded from proceeding further because of a merger. (See *Gaillard, supra,* 173 Cal.App.3d at p. 414.) We are not persuaded.

The fact remains that a derivative claim belongs to the corporation, not to the plaintiff asserting the claim on the corporation's behalf. To ensure that the corporation's interests are adequately represented, the derivative plaintiff must maintain a proprietary interest in the corporation sufficient to motivate the plaintiff "to engage in a zealous prosecution." (*Continuous Ownership Requirement, supra,* 43 Wash. & Lee L.Rev. at p. 1034.) Although equitable considerations have prompted courts to disregard a loss of shareholder status when the merger itself is the subject of a claim of fraud, no such claim is alleged in this case.

As for stockholders who incur monetary obligations when actively litigating a derivative action, the law is settled that derivative plaintiffs may recover their expenses upon showing their efforts resulted in a monetary recovery for the corporation or otherwise conferred a " 'substantial benefit' " upon the corporation. (*Baker v. Pratt* (1986) 176 Cal.App.3d 370, 378 [222 Cal.Rptr. 253]; *Fletcher v. A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 318–323 [72 Cal.Rptr. 146] [affirming an attorney fee award in favor of plaintiffs where partial settlement of derivative action resulted in immediate changes in the corporate management, while several issues were left to future arbitration]; accord, *Schilling v. Belcher, supra,* 582 F.2d at p. 1003 [although plaintiff who sold stock lost derivative standing to litigate corporate claims, he retained standing to defend on appeal an attorney fee judgment, which ran directly in his favor, and the judgment that served as the necessary predicate to the fee award].) Neither type of showing has been made here,[14] and we perceive no inequity in a situation where an ordinary merger cuts off protracted litigation that has conferred no monetary recovery or substantial benefit to the corporation. (Accord, *Lewis v. Chiles* (9th Cir. 1983) 719 F.2d

---

[14] To the contrary, the trial court dismissed the derivative action with prejudice after reviewing the 64-page report of the SLC that concluded the derivative claims lacked merit and would likely not be successful.

1044, 1049 ["[w]here a corporation's actions vitiating a derivative suit have a legitimate business purpose, there is no basis for requiring that the shareholders bear a proportion of a plaintiff's costs if the suit has not yielded a benefit to the corporation . . ."].)

Finally, Huang argues that to protect the interests of shareholders, and to prevent unjust enrichment and avoid rewarding wrongdoers, courts faced with a merger situation in a derivative action may apportion any recovery belonging to the corporation among deserving stockholders. The authorities Huang cites, however, do not suggest that former stockholders may receive a pro rata share of a corporate recovery under the sort of factual scenario presented here. (E.g., *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 127 [84 Cal.Rptr.2d 753]; *Rankin v. Frebank Co.* (1975) 47 Cal.App.3d 75, 96 [121 Cal.Rptr. 348] [addressing recovery in the context of a corporation's involuntary dissolution].)[15]

■ In sum, we hold that California law, like Delaware law, generally requires a plaintiff in a shareholder's derivative suit to maintain continuous stock ownership throughout the pendency of the litigation. Under this rule, a derivative plaintiff who ceases to be a stockholder by reason of a merger ordinarily loses standing to continue the litigation.[16] Although equitable considerations may warrant an exception to the continuous ownership requirement if the merger itself is used to wrongfully deprive the plaintiff of standing, or if the merger is merely a reorganization that does not affect the plaintiff's ownership interest, we need not address such matters definitively in this case, where no such circumstances appear.

Because dismissal of Huang's appeal is required under either California law or Delaware law, we end the analysis here.

---

[15] Huang makes a related argument that the 1988 enactment of section 25502.5, which allows issuers of securities as well as their shareholders in a derivative action to recover damages in an amount up to three times the amount of wrongful profits obtained by those trading on insider information, confirms the legislative intent to broaden, not restrict, the standing of derivative plaintiffs under section 800. Huang, however, identifies nothing in the terms or history of the legislation indicating that section 25502.5 is intended to alter section 800's requirements for derivative actions in general.

Huang may also be understood as arguing that, whether or not continuous ownership of shares generally is required to maintain a derivative lawsuit on behalf of a corporation, his particular claim under section 25502.5 must be analyzed separately and is not subject to any such requirement. Because Huang failed to raise this issue in the Court of Appeal, and also failed to petition for its review in this court, we decline to address it.

[16] *Gaillard v. Natomas Co., supra,* 173 Cal.App.3d 410, is disapproved to the extent it is inconsistent with the views expressed herein.

DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.