Filed 10/25/24  9 Star Construction v. Dimapasok CA4/2

*See concurring and dissenting opinion*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

9 STAR CONSTRUCTION et al.,

 Plaintiffs, Cross-defendants and Appellants,

v.

GINGER DIMAPASOK et al.,

 Defendants, Cross-complainants and Respondents.

E080273

(Super.Ct.No. CIVDS1914437)

OPINION

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed with directions.

Kowal Law Group and Timothy M. Kowal for Plaintiffs, Cross-defendants and Appellants.

1

Law Offices of Kathleen E. Alparce and Kathleen E. Alparce; Law Office of Michael G. York and Michael G. York for Defendants, Cross-complainants and Respondents.

## I.  INTRODUCTION

On October 25, 2022, following a bench trial, the trial court entered judgment in the principal sum of $134,503.63 against appellants 9 Star Construction (9 Star), Amrit Bakshi, and Deen Bakshi, and in favor of respondents Café 86, Ginger Dimapasok, and James Dimapasok, on plaintiff 9 Star's complaint against respondents and on respondents' cross-complaint against appellants.  The judgment is comprised of $94,273.63 in damages plus $40,230 in attorney fees, and is based on 9 Star's breach of a construction contract, signed on September 10, 2018, between 9 Star, as contractor, and Café 86, as owner (the 2018 contract).

Appellants claim there are two "legal defects" in the judgment:  (1) the $40,230 attorney fee award is unauthorized because there is no attorney fee provision in the 2018 contract (Civ. Code, § 1717); and (2) the judgment is awarded in favor of respondents Ginger Dimapasok and James Dimapasok, who were not parties to, and therefore have no "standing" to enforce, the 2018 contract.

We agree that the $40,230 attorney fee award is unauthorized and must be stricken from the judgment.  There is no attorney fee provision in the 2018 contract to support the attorney fee award (see Civ. Code, § 1717), and the record on appeal affirmatively shows that the $94,273.62 in damages was awarded based solely on 9 Star's breach of the 2018

2

contract. There is also no statutory basis for the attorney fee award. We affirm the judgment in all other respects. Appellants have not shown the judgment was erroneously entered in favor of Ginger Dimapasok and James Dimapasok, in addition to Café 86.

## II. BACKGROUND

A. *Settling the Record on Appeal*

On August 15 to 16, 2022, the court conducted a bench trial on the complaint and cross-complaint. The record on appeal does not include a reporter's transcript of the bench trial. In lieu of a reporter's transcript, appellants designated a settled statement to serve as the record of the oral proceedings in the trial court. (Cal. Rules of Court, rules 8.121, 8.137(b).)[1] In a response to the proposed settled statement, respondents did not object to or propose any amendments to the proposed settled statement. The trial court approved appellants' proposed settled statement as complete and correct. (Rule 8.137(h)(3).)

In summarizing the testimony and other evidence presented at trial, the settled statement states the following: "Plaintiff 9 Star testified about the agreement between the corporation and defendants. Plaintiff testified about payments he received [and] about the modifications to the agreement . . . to exten[d] time to complete the project. Evidence of communications between the parties was introduced. Testimony and evidence about the reasons for the delay in completion was presented."

---

[1] Undesignated rule references are to the California Rules of Court.

Appellants designated a clerk's transcript to serve as the record of the documents presented in the trial court. The clerk's transcript was to include the complaint, cross-complaint, plaintiff's written closing argument, and numerous trial exhibits, including the 2018 contract (Exhibit 501). The cross-complaint was not included in the clerk's transcript. We granted appellants' request to augment the record with the cross-complaint and the deposition transcript of James Dimapasok, which appellants claimed had been lodged in the trial court. (Rule 8.155.)

Concurrently with their reply brief, appellants filed a second motion to augment the record, this time with cross-complainants' and respondents' "trial closing brief," which contained cross-complainants' request for attorney fees. Respondents oppose the motion. We deferred ruling on the motion for consideration with this appeal, and we now grant the motion to augment the record with respondents' trial closing brief.

In a declaration, appellants' counsel has explained that he was retained, after the first motion to augment the record and appellants' initial opening brief were filed, for the purpose of filing, with this court's leave, an amended opening brief challenging the attorney fee award, among other things. Appellants were granted leave to file and filed an amended opening brief. When respondents filed their respondents' brief and addressed the attorney fee issue, appellants' counsel learned for the first time that respondents were claiming "that their trial closing brief—which was not included in the Clerk's Transcript—contains their request for attorneys' fees."

In opposing the motion, respondents complain that appellants "have already had plenty of opportunities to designate the record on appeal that they want, and respondents

4

would be prejudiced by granting the motion." We discern no prejudice to respondents by augmenting the record with respondents' closing trial brief. The brief was filed in the trial court and, as the parties agree, contains respondents' request for $40,230 in attorney fees. (See *Global Modular, Inc. v. Kadena Pacific, Inc.* (2017) 15 Cal.App.5th 127, 152, fn. 5 ["The rule allowing record augmentation [(rule 8.155)] 'is to be construed liberally' and allows a party to supplement the appellate record with any materials that were before the trial court."].)

B. *What the Record on Appeal Shows*

    1. <u>The Pleadings</u>

In its complaint filed May 9, 2019, plaintiff 9 Star sued defendants Ginger Dimapasok and Jason Dimapasok, each as "an individual doing business as 'Café 86,' " a pastry shop. The complaint named a third defendant, R.G.A. Financial Management, Inc., the owner of the property where the Café 86 pastry shop was located. The complaint alleged that the 2018 contract was entered into between plaintiff 9 Star and defendants Ginger Dimapasok and Jason Dimapasok. The 2018 contract required 9 Star to furnish labor, services, equipment, and materials for a work of improvement on the property where Café 86 was located for "the agreed contract price of $200,000," plus additional sums for extra work. The complaint alleged 9 Star performed under the 2018 contract from September 2018 to February 2019, and that the Dimapasoks breached the contract and owed 9 Star a balance of $80,620.00. Against the Dimapasoks, the complaint alleged four causes of action, styled as breach of contract, account stated, open book account, and reasonable value of services rendered. In a fifth cause of action, the

5

complaint sought to foreclose a mechanic's lien against the property where Café 86 was located and against the property's owner, R.G.A. Financial Management, Inc. In each cause of action, the complaint sought $80,620.00, plus attorney fees and interest.

In their cross-complaint, filed on July 10, 2019, cross-complainants Ginger Dimapasok, James Dimapasok, and "Café 86 Corp" sued cross-defendants 9 Star, Amrit Bakshi, and Deen Bakshi for breach of contract and related causes of action based on the 2018 contract. The cross-complaint alleged that Café 86 was a California corporation—not a fictitious business name, as the complaint alleged—whose primary business was selling specialty drinks, coffee, and desserts, and which was partially owned by Ginger Dimapasok and James Dimapasok. In September 2018, Café 86's commercial space was empty and "needed tenant improvements" to have a "fully functioning bakery, kitchen and office." The Dimapasoks met with Amrit Bakshi and Deen Bakshi, the individuals who represented 9 Star. Deen Bakshi verbally represented that the work would take around three months to complete from the time permits were acquired. On September 10, 2018, the Dimapasoks signed the 11-page 2018 contract with 9 Star.

The cross-complaint alleged 9 Star breached the 2018 contract by failing to complete the work on time, among other things. The Café 86 bakery was supposed to open by mid-January 2019, but the work was far from complete by that time. In February 2019, the Dimapasoks terminated the 2018 contract after paying 9 Star $120,000 of the $200,000 contract price. The Dimapasoks paid another contractor $130,666.08 to complete the work, and paid an additional $6,943.55 to one of 9 Star's suppliers to satisfy a mechanic's lien claim for over $8,000. The cross-complaint also sought $16,500 in

6

rental expenses on Café 86's leasehold, which were incurred due to the three-month delay in Café 86's opening. The cross-complaint sought total damages of "not less than $80,000."

2. The Closing Argument Briefs

In their closing argument brief, plaintiff 9 Star argued it performed its obligations under the 2018 contract and explained that delays in the work were due to factors beyond its control. 9 Star claimed the work was 85 percent complete in early February 2019 when defendants terminated the contract. 9 Star sought $80,600 in contract damages plus costs of suit. 9 Star expressly did not seek attorney fees, stating there was "no contractual provision" and "no statutory ground" for recovery of attorney fees. 9 Star also argued that the Dimapasoks were not "real parties in interest" and lacked standing to sue on the 2018 contract because they were not parties to the 2018 contract.

In their closing argument brief, cross-complainants argued the work was not 85 percent complete when the 2018 contract with 9 Star was terminated in February 2019. Cross-complainants sought and were awarded $134,503.63, comprised of $94,273.63 in damages and $40,230.00 in attorney fees (for 135 hours at $298 per hour). Regarding the attorney fee request, counsel for cross-complainants wrote: "My client would like to ask for attorneys fees, as we believe[e] we were dragged into court and consequently incurred over $40,000 in defense-related attorneys fees since 2019. We ask the court to provide reimbursement and relief in contract law for damages owed to Café 86 and the Dimapasoks and RGA Management. Therefore, [cross-complainants]

7

respectfully request . . . that this court award . . . judgment for $134,503.63 or in the event that attorneys fees will not be awarded, $94,273.63."

### 3. The Judgment

In the October 25, 2022 judgment, the court awarded cross-complainants the full amount they sought from cross-defendants: $134,503.63, including $40,230 in attorney fees. An attachment to the judgment states: "Plaintiff [9 Star] has failed to prove its case by a preponderance of the evidence. The court concurs with defendant that the contract entered into by the parties, exhibit # 502, set forth that time was of the essence and, at the time the defendant ordered plaintiff to stop work, plaintiff had not substantially completed the work. The court estimates that less than 65 [percent] of the work was completed when defendant ordered plaintiff to stop work. Plaintiffs were in substantial breach and shall take nothing."

## III. DISCUSSION

In their amended opening brief, appellants raise four claims of error: (1) insufficient evidence supports the court's findings that Café 86 incurred $94,273.63 in damages; (2) insufficient evidence supports the court's finding that 9 Star was the alter ego of Amrit Bakshi and Deen Bakshi, therefore, judgment should not have been entered against Amrit Bakshi and Deen Bakshi; (3) the attorney fee award is unauthorized because "there is no contract for attorneys' fees"; and 4) because Café 86 was the party to the 2018 contract with 9 Star, the principals of Café 86, the Dimapasoks, lack standing to sue, and judgment should *only* have been entered in favor of Café 86, not the Dimapasoks and Café 86.

8

In their reply brief, appellants concede that the record on appeal is insufficient to support their first two claims—their substantial evidence challenges "to damages" and to Amrit Bakshi's and Deen Bakshi's alter ego liability for 9 Star's breach of contract. Indeed, appellants concede, and we agree, that "lacking a reporter's transcript, we do not know what testimony was given about damages." Appellants maintain, however, that "Café 86 is wrong on attorneys' fees and standing." Thus, we limit our analysis to the issues of attorneys fees and the Dimapasoks' standing.

## A. *The Attorney Fee Award Is Unauthorized*

Appellants claim the $40,230 attorney fee award is unauthorized because there is no contractual or statutory basis for awarding attorney fees. Appellants note it is "unclear how" the attorney fee award "came about" because the docket did not "reflect any motion for attorneys' fees having been filed, or any hearing on such a motion having been held." Appellants also noted that, although the cross-complaint sought " 'such other and further relief as the Court may deem just and proper, including attorney fees and costs,' " the cross-complaint did not reference a contractual or other legal basis for awarding attorney fees.

### 1. Legal Principles

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see Cal. Const., art. VI, § 13; Code Civ. Proc.,

9

§ 475.)[2]  Thus, on appeal, "the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

" 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] . . . 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609; see *Bowser v. Ford Motor Co.* (2022) 78 Cal.App.5th 587, 610.)

"Under California law, 'each party to a lawsuit must pay its own attorney fees unless a contract or statute or other law authorizes a fee award.' ([Citations]; Code Civ. Proc., § 1021.) Thus, unless specifically provided by statute or agreement, attorney fees are not recoverable." (*K.I. v. Wagner* (2014) 225 Cal.App.4th 1412, 1420-1421; *Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 666-667 [Attorney fees may be awarded only when they are recoverable as costs under Code of Civil Procedure section 1033.5, subdivision (a)(10)—that is, only when they are authorized by contract, statute, or law].)

Civil Code section 1717 provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).) The statute "explicitly makes fees an element of costs and allows an award of attorney's fees to the party that 'recovered' greater relief in the action on the contract." (*Chen v. Valstock Ventures*, *LLC* (2022) 81 Cal.App.5th 957, 971-972.)

"Ordinarily, contractual attorney's fees must be sought by noticed motion. (Code Civ. Proc., § 1033.5, subd. (c)(5); [citations].) This is true regarding both the entitlement to, and the amount of, the fees. [Citation.] The necessary motion may be filed after the judgment has already been entered [citation]—and almost always is, for good reasons. First, before the entry of judgment there is technically no prevailing party. (See Code Civ. Proc, § 1032, subd. (a)(4).) Second, the parties may still incur additional fees." (*PR Burke Corp. v. Victor Valley Wastewater Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1052.) It is error to adjudicate the entitlement to fees, and the amount of fees, in the judgment before any motion for fees has been filed, but that error may be waived on appeal by failing to object to it in the trial court. (*Ibid.*)

2. Analysis

Here, the trial court's adjudication in the judgment, rather than by noticed motion, that cross-complainants Café 86 and the Dimapasoks were entitled to recover their attorney fees, and the amount of those fees ($40,230), was a procedural error, and appellants forfeited the error by failing to object to the judgment in the trial court. (*PR*

11

*Burke Corp. v. Victor Valley Wastewater Reclamation Authority*, *supra*, 98 Cal.App.4th at p. 1052.)  But appellants did not forfeit their claim that the attorney fee award is unauthorized by contract, statute, or law.  (§§ 1021, 1033.5, subd. (a)(10).)  "Whether a legal basis exists for  an award of attorney fees is a question of law, which the reviewing court examines de novo."  (*Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1535.)

As appellants point out and noted in their trial closing brief, the 2018 contract does not contain an attorney fee provision.  (See Civ. Code, § 1717.)  Nor is there any indication in the record that the fees were allowable by statute, other law, or another contract.  The enforcement of the parties' rights under the 2018 contract was the central issue at trial.  The record on appeal—even without a reporter's transcript of the trial— affirmatively shows that the $94,273.63 damages award is based solely on the court's finding that 9 Star breached the 2018 contract by failing to timely or substantially complete the work it agreed to complete for Café 86 under the 2018 contract. Thus, appellants have provided an adequate record on appeal, and have affirmatively shown that there is no legal basis for the $40,230 attorney fee award.

Respondents argue, "the record does not affirmatively show that the written contact referred to was the only agreement and that there was no other agreement that provided for the award of attorney's fees."  Thus, respondents argue, "it must be presumed that the papers Respondents filed support the trial court's award of attorney's fees." (*Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609 [A judgment is ordinarily presumed correct on appeal, and the appellant has the burden of providing an adequate record to

12

demonstrate error.)  But the "papers" respondents filed—their trial closing brief, which is now in the record—do not support the attorney fee award.

In respondents' trial closing brief, counsel wrote his "client would like to ask for attorneys fees," but counsel did not cite a contractual or other legal basis for awarding fees to defendants and cross-complainants, Café 86, Ginger Dimapasok, and James Dimapasok.  Thus, the trial closing brief tends to confirm what the rest of the record affirmatively shows—that there is no legal basis for the attorney fee award.

B.  *The Judgment Was Properly Entered in Favor of the Dimapasoks*

Appellants claim the trial court erred in entering judgment in favor of the "two principals" of Café 86, defendants and cross-complainants, the Dimapasoks.  Appellants complain that "the contract with 9 Star was with Café 86 only, not the Dimapasoks"; thus, they argue, the Dimapasoks did not have standing to sue under the 2018 contract, and judgment in this action on the 2018 contract was erroneously entered in favor of the Dimapasoks, in addition to Café 86.

On this point, appellants have failed to provide an adequate record affirmatively showing that the trial court erred in entering judgment in favor of the Dimapasoks in addition to Café 86.  (*Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609.)  First, it is unclear from the record whether Café 86 is a fictitious business name of the Dimapasoks or a California corporation.  The complaint names the Dimapasoks as individual defendants, "doing business as 'Café 86,' " suggesting Café 86 is a fictitious business name of the Dimapasoks, but the cross-complaint alleges that Café 86 is a California corporation.

13

The use of a fictitious business name does not create a legal entity separate from the person who uses the name.  (*Muddy Waters*, *LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 920.)  Thus, if Café 86 is a fictitious business name for the Dimapasoks, then Café 86 does not exist separately from the Dimapasoks; the Dimapasoks are parties to the 2018 contract, through Café 86; and judgment was properly entered in favor of the Dimapasoks, in addition to Café 86.

As noted, " '[i]n the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' "  (*Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609.)  Here, there is no "contrary" affirmative showing that the trial court necessarily erred in entering judgment in favor of the Dimapasoks.  (*Ibid*.) We simply do not know what evidence was presented at trial.

## IV.  DISPOSITION

The matter is remanded to the trial court with directions to amend the October 25, 2022 judgment to strike the $40,230 attorney fee award.  In all other respects, the judgment is affirmed.  The parties shall bear their respective costs on appeal.  (Rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS_____
Acting P. J.

I concur:


MENETREZ_____
J.

[*9 Star Construction v. Dimapasok et al.*, E080273]

RAPHAEL, J., concurring and dissenting.

     I agree with the portion of the majority opinion striking the attorney fee award.  I disagree, though, with the portion of the opinion that permits the two individuals to recover in this case along with Café 86 Corporation.

     The construction contract in the case was entered into by "Cafe 86," not any individual.  If Café 86 is a corporation, that means it "is a legal entity that is distinct from its shareholders."  (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.)  It has the "authority to commence, defend, and control actions" on its behalf but "the shareholders have no direct cause of action or right to recovery against those who have harmed it." (*Ibid.*)

     The online records of the California Secretary of State show that Café 86 Corp. is an active California corporation with Articles of Incorporation dated and filed April 11, 2014.[1]  These government records are properly the subject of judicial notice, and we should take notice of them on our own motion.  (See *City of Alameda v. Sheehan* (2024) 105 Cal.App.5th 68, 81, fn. 7 [judicial notice of Secretary of State business searches].)

---

[1]  The Secretary of State file-stamped form government records are available at a history link upon a search for the company at https://bizfileonline.sos.ca.gov/search/business (searched October 21, 2024).  The corporate name in the government records is "Cafe86 Corp." with no space before the numeral.  That is the company that sued here; the filed-stamped 2024 annual report on a Secretary of State form identifies a Chino, California, corporate address that is the same as the address on Café 86 Corp. invoices in our record.  The corporate agent's last name (Dimapasok) is the same as that of the individuals that filed the cross-complaint along with Café 86 Corp.

Moreover, when Café 86 filed this lawsuit to recover its contract damages, it alleged that it was a corporation.  The 12-count cross-complaint in this case, drafted by a lawyer, was captioned as filed by "Café 86 Corp" and the two individuals.  The first sentence of the cross-complaint stated: "Café 86 Corp. a California corporation, doing business as CAFE 86."  The pleading's first allegation was "Café 86 is a California Corporation" that is partially owned by the two individuals.

Consistent with its assertion that Café 86 was a corporation, the cross-complaint treated Café 86 as entering the contract, acting on it, and suffering from its breach.  It stated, for instance, "Café 86 needed tenant improvements"; "Café 86 would only pay them more money if . . . ."; "James informed Amrit that Café 86 would like to pay him . . . ."; and "Café 86 has been damaged in a sum to be proven at trial."

Through their cross-complaint, then, Café 86 Corp. and the individual cross-complainants admitted that Café 86 was a corporation.  "The admission of fact in a pleading is a judicial admission.  A judicial admission in a pleading is not merely evidence of a fact; it is a conclusive concession of the truth of the matter.  Well pleaded allegations in the complaint are binding on the plaintiff at trial.  The trial court may not ignore a judicial admission in a pleading, but must conclusively deem it true as against the pleader."  (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187 [cleaned up]; *Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 772 [cleaned up] ["The admission of fact in a pleading is a judicial admission.  It is a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the

2

matter from the issues."]; *Hearn Pacific Corp. v. Second Generation Roofing Inc.* (2016) 247 Cal.App.4th 117, 132 ["nothing unfair or inappropriate" in holding party to its factual allegations].)

On the claims in the cross-complaint here, a trial court could have granted judgment on the pleadings against the individual defendants on the request of cross-defendant 9 Star. (See *Bucur v. Ahmad*, *supra*, 244 Cal.App.4th at p. 187.) The admission alone establishes they lack standing to recover on the corporation's contract.

Even though the case went to trial, the admission that Café 86 Corp. is a corporation waived the need for any proof of that fact in the trial record. It is possible in theory that a party could correct a mistaken admission in a pleading through an amended pleading. (See *Hearn Pacific Corp.*, *supra*, 247 Cal.App.4th at p. 132 & fn.7). Here, we lack a reporter's transcript, and the settled statement contains vague characterizations of witness testimony. But the trial court register of actions shows no amended cross-complaint, and the judgment was entered on the cross-complaint.

We know, moreover, that Café 86 Corp. has not abandoned its admission that it is a corporation—and not only because it is registered as one with the Secretary of State. The entity that pursued this judgment in trial court and defends it here is "Café 86 Corp." Our trial record includes several invoices that billed "Cafe 86 Corp." The checks used to pay the invoices had "Café 86 Corp." printed on them. In the trial court register of actions, Café 86 Corp. is shown as an entity, represented by a lawyer, that has paid a filing fee separate from the individuals. In this court, accordingly, respondent's counsel

3

filed his brief on behalf of Café 86 Corp. as well as the individuals. In oral argument here, respondent's counsel called the issue of the individuals' standing "much ado about nothing" because "even if you have three judgment creditors, it's not as if you get to recover the judgment three times, it's still one judgment, one amount." Counsel said a change to a judgment that eliminated the individuals "doesn't make a difference." Thus, Café 86 Corp. and the individuals continue to acknowledge—consistent with the admission in their cross-complaint—that Café 86 Corp. is a legal entity that can appear in court and enforce a judgment in its favor. If Café 86 Corp. is merely a "dba" (a name that the individuals do business as), it would not be a legally separate entity. "Doing business under another name does not create an entity distinct from the person operating the business. The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner." (*Providence Washington Ins. Co. v. Valley Forge Ins. Co.* (1996) 42 Cal.App.4th 1194, 1200 [cleaned up].)

Café 86 Corp. cannot simultaneously be both a corporation (with its own standing to contract and recover) and an unincorporated dba (an extension of its owners with no standing of its own). As Café 86 Corp. continues to maintain that it is a corporation that can recover the judgment it obtained, it should be compelled to concede that it is not just a dba used by its owners that lacks its own legal standing. At oral argument, it did not do so. Instead, its counsel suggested an idea mentioned nowhere in the briefing: that Café 86 could have been a dba *and then* a corporation during the contract. Counsel said the entity was a "dba for a period of time and then was incorporated." He said "it started out

4

as a dba and at some point in time it made it worthwhile to incorporate." He said "it was different capacities at different periods of time." Although Café 86 Corp. could have been a dba before it was a corporation, the Secretary of State records show it has been a California corporation since 2014. The contract here was signed in 2018 (four years after incorporation) and the cross-complaint filed in 2019 (five years after incorporation). We should not indulge the suggestion that evidence showed Café 86 Corp. was both a corporation and not a corporation during the contract.[2]

In all, the better view of our record is that Café 86 Corp. pled that it was a corporation in its cross-complaint and has never recanted that admission, which makes its own judgment valid. But it means the individual owners cannot recover on the corporation's contract. In their written closing argument at trial's end, 9 Star argued that "a non-suit be granted as to the individual defendants." They offered the same reason they now argue on appeal: "The owner of the Café is the corporate entity. James and Ginger are officers of the corporation. James and Ginger are not the real party in interest. Therefore, James and Ginger, as individuals, lack the authority and standing to bring

---

[2] Even though Café 86 Corp. has recovered a judgment, we today also allow the individuals to recover because we "simply do not know what evidence was admitted at trial." (Maj. opn., *ante*, at p. 14.) This approach endorses the possibility, mentioned at oral argument, that some trial evidence indicates that Café 86 was not only a corporation as it admitted in its cross-complaint, but also was a dba during the contracting period. This is not a "reasonable inference[]" that should be indulged to support the judgment. (*Stevens v. Parke, Davis, & Co.* (1973) 9 Cal.3d 51, 64). Before we accept it, we should at a minimum allow the parties to address by letter their view which is the truth: (a) the Secretary of State record of Café 86 Corp.'s file-stamped 2014 incorporation documents and other corporate filings thereafter, or (b) counsel's oral argument suggestion that some competent evidence may establish that Café 86 was a dba, instead of a corporation, during a portion of time between the 2018 contract and the 2019 cross-complaint.

action on the contract . . . ." Our trial record contains no response to this argument from Café 86 Corp. and the individuals, nor from the trial court. It does not, however, make sense for this construction contract to be enforceable both by the corporation that entered into it and by individual owners who are not parties to it.

The majority opinion points out that 9 Star's complaint—filed before the cross-complaint—does not refer to Café 86 as a corporation and names the individual defendants as doing business as Café 86, thereby "suggesting Café 86 is a fictitious business name" of the individuals. (Maj. opn., *ante*, at p. 13.) 9 Star's suggestion in its complaint should have no weight. It is not a judicial admission. 9 Star alleged that Café 86 was "a business entity, form unknown." It also alleged that the individuals were doing business as Café 86. The judicial admission doctrine does not apply when a pleading is ambiguous. (*Hearn Pacific Corp.*, *supra*, 247 Cal.App.4th at p. 132, fn.7.) It does not contradict 9 Star's allegations for it to contend that Café 86 is a corporation. It alleged it did not know the company's form, then it later learned it.

In sum, having filed a cross-complaint alleging Café 86 was a California corporation called Café 86 Corp., the individuals cannot claim that they can recover on Café 86's construction contract. For that reason, I would modify the judgment to eliminate the award to the individuals, leaving the judgment (without attorneys' fees) to the corporation that entered into the contract.

RAPHAEL                    

J.

6