Filed 11/20/25  Blum v. Markusic CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL BLUM et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>THOMAS MARKUSIC et al.,<br><br>        Defendants and Respondents. | A171727<br><br>(San Mateo County Super. Ct. No. 19CIV05852) |

The plaintiffs (collectively "Blum," after lead plaintiff Michael Blum) in this shareholder action were investors in a multi-million dollar aerospace startup that ultimately went bankrupt.  Blum alleges that the defendants (collectively "Markusic," after defendant Thomas Markusic) schemed to loot the company of its assets and transfer them to a new company in which Blum had no ownership interest, depriving Blum's shares in the original company of any value.  Blum now appeals from the trial court's decision to sustain Markusic's demurrer.  We conclude that the trial court properly sustained the demurrer. However, because Blum should be given an opportunity to amend his complaint to plead a holder's cause of action (see *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 171, 184 (*Small*)), we reverse the judgment.

1

## BACKGROUND

### A.

Depending on the circumstances, a corporate shareholder may bring one of two types of actions: a direct action or a derivative action. (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 311-312 (*Schuster*).) A direct action is brought on behalf of the shareholder for injury to the shareholder's own interests. (*Id.* at pp. 311-312.) A derivative action is brought on behalf of the corporation for an injury suffered by the corporation, and it provides a way for a stockholder to enforce a corporation's rights when its board of directors declines to do so. (*Id.* at p. 312; *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1114 (*Grosset*).) Where, as here, a company is in bankruptcy, however, a shareholder lacks standing to bring a derivative action because the action is an asset of the corporation that belongs to the bankruptcy estate. (See *Pepper v. Litton* (1939) 308 U.S. 295, 307; *Schuster*, at p. 312; 11 U.S.C. § 541.)

### B.

The following factual allegations are taken from Blum's third amended complaint (hereinafter "complaint").

Markusic was "one of the world's foremost experts in rocket propulsion and launch vehicle development." In 2013, Markusic came up with the idea for an aerospace company that would be called Firefly Space Systems, Inc. ("Original Firefly"), and he approached potential investors, including Blum. Markusic promised Blum that they "were a team, that he would always use his power and influence to act in furtherance of [the] team's best interests, that he would do whatever was necessary to make the company succeed for them all, and that he would never work for or create a competitor." Blum "invested in Original Firefly because of [his] belief in those promises and trust in [Markusic]."

2

In total, Blum owned about 38 percent of the stock of Original Firefly.

From 2014 to 2016, with Markusic as its Chief Executive Officer, Original Firefly was highly successful, attracting millions of dollars in funding and winning contracts with NASA and other aerospace entities. Blum contributed to this success, serving as unpaid Chief Financial Officer, Chief Operating Officer, and Board Member. By the summer of 2016, Original Firefly had an expanding team of 180 technical professionals and an internal valuation of $110 million. However, in late 2016, Original Firefly needed additional funding to complete its initial "Series A" funding round.

In the fall of 2016, a potential investor named Maxym Polyakov approached Markusic about investing in Original Firefly. Polyakov was the Chief Executive Officer and owner of Noosphere Venture Partners LP, an investment firm focused on space and satellite technologies. Although Markusic initially had misgivings about working with Polyakov due to various alleged scandals concerning his other business interests, Markusic actively negotiated and communicated with Polyakov as well as Polyakov's Noosphere colleague, Mark Watt.

Rather than invest in Original Firefly, however, Markusic, Polyakov, and Watt developed a plan to loot Original Firefly of its assets and relaunch it as a new company controlled by them.

In late 2016, Markusic, Polyakov, and Watt presented a financing proposal to "Original Firefly's investor-shareholders." The proposal would exchange existing Original Firefly shares for a total 10 percent stake in a new successor company, without any dilution protections. Among other problems, "these terms substantially undervalued the investments that [Blum] had made in Original Firefly, ignored the value of the intellectual property that had been developed, and clearly would deprive [Blum] of the benefit of [his] commitment and contribution to Original Firefly."

3

When investors raised their concerns about the proposal to Markusic, he promised to try to get them a better deal. Blum "discussed [his] concerns with Markusic that [he] did not want to lose the value of [his] financial and work investment in Original Firefly, and wanted Markusic to look out specifically for [him] and [his] interests." Blum told "Markusic that [he] wanted him, in his personal capacity, to represent [Blum], in [his] individual capacit[y] and not merely as [one] of the investors in Original Firefly, in negotiations with Polyakov, Watt, and Noosphere." Markusic "agreed to act as [Blum's] agent in those negotiations" and told him he "would refuse any deal that would not preserve or benefit [his] investment." Markusic also urged Blum to reject the "low-ball offer," promised to negotiate a better deal, and represented that he would continue to work on identifying other financing options for Original Firefly.

But "[i]n reality, . . . Markusic was stringing [Blum] along while he and his co-defendants developed" and executed "their plan to loot Original Firefly of its assets and deprive [Blum] of any value in [his] investments" in Original Firefly. Markusic incorporated a new successor company ("New Firefly"), helped Noosphere acquire Original Firefly's senior secured debt, and helped Noosphere foreclose on that debt. The foreclosure triggered a financial crisis at Original Firefly, enabling New Firefly to acquire Original Firefly's assets after they were sold at a "fire sale." Stripped of its assets, Original Firefly was forced to go into bankruptcy.

Markusic had promised Blum that he would stop negotiating with Polyakov if they were unable to reach a favorable deal, that he would continue to look for other potential investors for Original Firefly, and that he would not make any decisions without obtaining a majority vote of Original Firefly's shareholders. In reliance on Markusic's representations, Blum "forbore from taking any action that might have disrupted the

execution of [Markusic's] scheme" and did not "tak[e] any action that would have avoided or mitigated the destruction of the value in [his] ownership interests in Original Firefly." "On information and belief, Markusic did not intend to follow through on any of these representations at the time he made them. . . . but instead was pursuing the plan . . . to loot Original Firefly and use its assets for [New Firefly's] benefit, leaving Plaintiffs with worthless shares."

Based on these allegations, Blum's complaint alleges that Markusic defrauded him when he falsely promised to negotiate in his best interests, thereby preventing Blum "from being able to protect the value of [his] investment in Original Firefly" and from "receiv[ing] any ownership interest in the virtually identical New Firefly" (first cause of action). The complaint also alleges that defendants Polyakov, Watt, Noosphere, and New Firefly aided and abetted Markusic's fraud (second cause of action). In addition, the complaint alleges that Markusic breached his fiduciary duty of loyalty to Blum (third cause of action) as well as his fiduciary duty of care to Blum (fourth cause of action), and the other defendants aided and abetted these breaches (fifth cause of action). Further, Markusic fraudulently concealed his scheme to loot Original Firefly and start New Firefly in its place, causing Blum to "los[e] the value of [his] investments in Original Firefly and have no ownership interest in the virtually identical New Firefly" (sixth cause of action); and the other defendants aided and abetted Markusic's fraudulent concealment (seventh cause of action). In addition, Markusic's actions, including urging Blum to reject the offer to exchange Original Firefly shares for an interest in New Firefly, tortiously interfered with Blum's prospective business relationship with New Firefly (eighth cause of action). Finally, the complaint alleges that the foregoing conduct violates the Unfair Competition Law (ninth cause of action). (See Bus. & Prof. Code, § 17200 et seq.)

5

## C.

Blum filed this litigation in 2019, shortly after Markusic sought declaratory relief in Delaware state court based on the same surrounding circumstances.[1]  The trial court stayed this case while the Delaware action was pending.  In 2022, after the Delaware case was resolved,[2] the trial court lifted the stay in this case pursuant to the parties' stipulation.

---

[1] Markusic filed suit in Delaware based on a forum selection clause in Original Firefly's certificate of incorporation, which designated the Delaware Court of Chancery as the sole and exclusive forum for claims that the officers or directors of the corporation breached a fiduciary duty owed to the corporation or its shareholders.

[2] In the Delaware action, Markusic, Polyakov, Noosphere, and New Firefly sought a declaration that Markusic did not breach any fiduciary duties owed to Blum and that Polyakov, Noosphere, and New Firefly did not aid any breaches.  (See *Markusic v. Blum* (Del. Ch. Aug. 18, 2020, C.A. No. 2019-0753-KSJM) [nonpub. opn.] (*Markusic*), affd. (Del. Sept. 23, 2022, 284 A.3d 1017) [Supreme Court of Delaware affirming the decision of the Delaware Court of Chancery].)  Blum then filed counterclaims based on breach of fiduciary duty, breach of contract, tortious interference with contract, and tortious interference with prospective economic advantage.  (See *Markusic, supra,* C.A. No. 2019-0753-KSJM.)  The Delaware Court of Chancery held that Blum's claim for tortious interference with prospective economic advantage did not state a claim for which relief may be granted, and it dismissed the remaining counterclaims based on Blum's lack of standing to bring derivative claims.  (*Ibid.*)  Subsequently, the Delaware Court of Chancery declined to issue a declaratory judgment in favor of Markusic and the other Delaware plaintiffs, holding that its order dismissing the counterclaims resolved the dispute over whether those claims were derivative and that the court could not properly opine on the nature of claims pending in another court.  (See *Markusic v. Blum* (Del. Ch. Jun. 16, 2021, C.A. No. 2019-0753-KSJM) [nonpub. opn.], affd. (Del. Sept. 23, 2022, 284 A.3d 1017).)

Markusic demurred to the operative complaint, asserting that Blum lacked standing because his claims were derivative. Blum argued that his claims were not derivative because they were based on personal duties owed to him and that claims of fraud in connection with buying or selling stock are direct claims. Sustaining the demurrer, the trial court held that Blum lacked standing because his causes of action were derivative under both Delaware and California law, reasoning that "[a]lthough the causes of action in the [complaint] address the actions of Markusic as personal betrayals (e.g. sending emails saying they would all work together as a team; telling Plaintiffs that he would be their agent), ultimately what the [complaint] seeks to recover is the value of Plaintiffs' investments into the company," which is an injury to the corporation. In so holding, the trial court also concluded that Blum had failed to adequately plead any claims (1) that Markusic's misrepresentations had caused him to hold onto his Original Firefly shares rather than sell them (a "holder's" action); or (2) that Markusic fraudulently induced Blum to invest in Original Firefly at the outset by making false promises. The trial court denied leave to amend, reasoning that "[t]he pleadings here and in Delaware have been heavily revised and edited numerous times over 4+ years" and "it is clear Plaintiff cannot plead any direct causes of action."

## DISCUSSION

### A.

Blum contends that the trial court erred in dismissing his fraudulent inducement and holder's claims on the ground that, although they would be direct claims if adequately pled, the complaint failed to state a claim on these theories. According to Blum, Markusic did not demur on these grounds, and, in any event, his pleading was sufficient. Reviewing the adequacy of the complaint de novo (see *Committee for Green Foothills v. Santa*

*Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42), we disagree.

As an initial matter, as to each cause of action in the complaint, Markusic demurred on the ground that the complaint "fails to state facts sufficient to constitute a cause of action against Defendants." Blum is thus incorrect that the trial court's conclusion that the complaint failed to state a claim for a direct cause of action, either as to his holder theory or his fraudulent inducement theory, was not based on a ground raised in the demurrer. Further, the question whether a claim is direct or derivative requires assessing the nature of the wrong alleged. (See, e.g., *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.* (Del. 2004) 845 A.2d 1031, 1036, 1038 (*Tooley*).) Where a cause that would otherwise be direct is not properly plead, then the complaint fails to state a direct cause of action. (See *id.* at p. 1039 [explaining that a complaint does not "state[] a direct, individual claim" if "in reality, it states no claim at all"]; see also *Small*, *supra*, 30 Cal.4th at pp. 184-185; *Schuster*, *supra*, 127 Cal.App.4th at p. 315.)

We therefore proceed to consider whether the complaint adequately pled a holder's or fraudulent inducement action.

**1.**

A holder's action is a suit by a shareholder who alleges that the corporation's officers or directors fraudulently induced the shareholder to refrain from selling the shareholder's stock. (*Small*, *supra*, 30 Cal.4th at p. 171.) In support of his tortious interference cause of action (eighth cause of action), Blum argues that Markusic's alleged actions "fraudulently induced [him] to *hold*, rather than sell, [his] shares in Original Firefly." Blum asserts that this cause of action amounts to a " 'holder's action,' " which the California Supreme Court has recognized is not derivative when properly pled. (See *Small,* at pp. 184-185.)

8

As *Small* explained, what distinguishes a holder's action from a derivative suit is the requirement in a holder's action that the "plaintiff . . . allege specific reliance on the defendants' representations." (*Small, supra,* 30 Cal.4th at p. 184.) This requirement could be met by alleging, for example, "that if the plaintiff had read a truthful account of the corporation's financial status[,] the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place." (*Ibid.*) Further, "[t]he plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations." (*Ibid.*) Merely alleging that the plaintiff relied on a defendant's misrepresentations is insufficient. (*Ibid.*)

Under *Small*, Blum had to specifically allege that his personal reliance on Markusic's representations caused him to hold onto his stock. (See *Small, supra*, 30 Cal.4th at p. 184.) His complaint contains general allegations that Blum "relied on Markusic's repeated representations," he "forbore from taking any action that might have disrupted the execution of the Defendants' scheme," and he "forbore from taking any action that would have avoided or mitigated the destruction of the value in [his] ownership interests in Original Firefly." But the complaint nowhere alleges that Markusic's misrepresentations caused Blum to hold on to his shares. (See *Schuster, supra*, 127 Cal.App.4th at p. 315.) Further, the complaint does not allege that had Markusic told the truth, Blum would have sold his shares of Original Firefly, nor does it specifically allege how many shares he would have sold or when. (See *Small*, at p. 184.)

Instead, the complaint suggests that Blum would have rejected the November 2016 offer regardless. According to the complaint, the offer was seriously flawed: among other problems, the terms of the deal "substantially undervalued the investments

9

that Plaintiffs had made in Original Firefly, ignored the value of the intellectual property that had been developed, and clearly would deprive Plaintiffs of the benefit of their commitment and contribution to Original Firefly." Because the terms were so unfavorable, "[i]nvestors' concerns with the proposal were raised to Markusic" and, rather than sell their shares, a group of shareholders, including some of the plaintiffs here, instead proposed injecting additional capital into Original Firefly. And although Noosphere made another offer in December 2016, the complaint describes it as "another low-ball offer."[3] These allegations pose some tension with Blum's argument on appeal that Markusic's representations induced him to reject the offer from Polyakov, Watt, and Noosphere. Given the absence of detailed allegations of Blum's personal reliance on Markusic's misrepresentations, the trial court correctly determined that the complaint fails to sufficiently plead a direct holder's action under California law. (See *Small*, *supra*, 30 Cal.4th at p. 184; see also *Schuster*, *supra*, 127 Cal.App.4th at p. 315.)

**2.**

Although none of the nine causes of action in his complaint purport to be based on such a theory, Blum contends that his complaint alleges a fraud cause of action based on "Markusic's fraudulent inducement of Plaintiffs to invest in Original Firefly in the first instance." According to the complaint, when Markusic initially sought Blum's investment in Original Firefly, Markusic promised that "they each were a part of the team," "he would always act to further the team's best interests," "he would do whatever was necessary to make the company succeed for them all," and "he would never work for or create a competitor." Blum relied on these representations when he agreed to invest in

---

[3] As Blum's counsel described the situation in the trial court, the "Plaintiffs looked at the deal, and they said, 'Look, we don't think this is a very good offer.'"

Original Firefly.  We agree with the trial court that Blum's allegations of fraudulent inducement are legally insufficient.

As Blum recognizes, a claim of fraudulent inducement requires a showing that "the defendant did not intend to honor [his] . . . promises" at the time they were made.  (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1131 (*Food Safety*); see also Civ. Code, §§ 1709, 1710, subd. 4.; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) Nonperformance, without more, is insufficient to show that the defendant knew that his promises were false when he made them.  (*Food Safety*, at p. 1131.)  Here, the complaint alleges that Markusic made promises at the time Blum originally invested in Original Firefly, and it alleges facts indicating that the initial promises ultimately were not kept.  But nowhere does the complaint allege that Markusic did not intend to honor his initial representations—i.e., that he would always work in the best interests of Original Firefly and he would never work for a competitor—at the time that he made them.  Indeed, the allegations support the opposite conclusion, asserting that from 2014 through 2016, Original Firefly "quickly achieved success," attracting millions of dollars in funding, winning contracts, and developing many of the key components of its first launch vehicle.

In sum, the trial court did not err when it concluded that Blum's complaint failed to state a claim based on either a holder's theory or fraudulent inducement.

## B.

We next consider de novo Blum's challenge to the trial court's determination that his remaining claims are derivative under both California and Delaware law.  (See *Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 150 (*Schrage*).)  We affirm the trial court's determination.

11

The parties dispute whether California or Delaware law applies in assessing whether Blum's claims are derivative or direct. As a result, our first question is whether there is a material conflict between the two states' laws on this question. (See *Grosset*, *supra*, 42 Cal.4th at p. 1107.) If the result is the same under either state's law, then there is no conflict of law to resolve. (*Ibid.*; see also *Schuster*, *supra*, 127 Cal.App.4th at p. 312.) We therefore turn to assessing whether Blum's claims are derivative under each state's law.

**1.**

An action is derivative under California law " ' "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." ' " (*Grosset*, *supra*, 42 Cal.4th at p. 1108; see also *Schuster*, *supra*, 127 Cal.App.4th at p. 313.) The corporation is the only party that directly benefits from a successful derivative action. (*Grosset*, at pp. 1108, 1114; see also *Schuster*, at pp. 311-314 [holding that injury to shareholders through diminution in stock value is incidental to injury to the corporation, so an action seeking redress for that injury is derivative].)

For example, an action alleging that mismanagement of the corporation by its officers injured the corporation (such as by reducing its assets or net worth) is a derivative one; a stockholder may not bring an individual action for the resultant decrease in value of the company's stocks. (See *Schrage*, *supra*, 69 Cal.App.5th at p. 153; *Schuster*, *supra*, 127 Cal.App.4th at pp. 311-312.) Similarly, an action is derivative where it seeks redress for injury based on the allegedly fraudulent transfer of the corporation's assets to another company without adequate consideration. (See *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964; see also *Avikian*

*v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108, 1111 (*Avikian*) [holding that an action was derivative where it alleged that officers and directors injured the corporation by looting or mismanaging its assets, resulting in liquidation of the company].)

In contrast, if the suit seeks to enforce a right belonging to the plaintiff individually and not to the corporation, then it is not derivative. (*Schrage, supra,* 69 Cal.App.5th at p. 150.) An action for redress of an injury to the plaintiff individually and not to the corporation is a direct or individual action. (See *ibid.*; *Schuster, supra*, 127 Cal.App.4th at pp. 312-313; see also *Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 530.) So long as "the injury is not incidental to an injury to the corporation, an individual cause of action exists." (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 107; see also *Schrage*, at p. 150.) Examples of direct actions include suits to compel declaration or payment of a dividend or to enforce shareholder voting rights. (*Schuster*, at p. 313.) A suit to enforce a contract to which the shareholder is a party, or to obtain redress for a fraud perpetrated on the shareholder directly, is also a direct action. (*Schrage*, at p. 150.)

Applying the foregoing principles, the trial court correctly determined that Blum's remaining claims are derivative rather than direct under California law. Blum's causes of action based on fraud (his first, second, sixth, and seventh causes) and breach of fiduciary duty (his third, fourth, and fifth causes) sought to recover the lost value of his investment stemming from Markusic's alleged scheme to loot Original Firefly and transfer its assets to New Firefly at a steep discount. As Blum's complaint alleged, "Markusic, who pretended to Plaintiffs that he was their agent acting to protect their investment, hatched and carried out a fraudulent plan . . . to eviscerate Original Firefly and loot its assets, thereby depriving Plaintiffs' investments of any value." Markusic's misrepresentations and failure to act in

13

good faith kept Blum "from taking steps to prevent Defendants from looting Original Firefly, which would have preserved the value of [his] monetary and time investments." The result of the alleged scheme was that Blum's "investment was rendered worthless."

In particular, Blum's fraud causes of action allege that Markusic misrepresented that "he would protect the value of their financial and time commitment to Original Firefly." Markusic acted "with the sole purpose of misleading Plaintiffs into not taking any action to protect their investment in Original Firefly and its value." As a result of Blum's reliance on Markusic's false representations, he was "prevented from being able to protect the value of [his] investment in Original Firefly" and "lost the value of [his] investment in Original Firefly." The result was that Blum "obtain[ed] little or no value for [his] investment in Original Firefly."

Thus, although Blum emphasizes that his fraud and fiduciary duty claims are based on misrepresentations made and duties owed to him personally, the *injury* is the destruction of the corporation and corresponding diminution in the value of its stock—that is, an injury to the corporation itself. (See *Schrage*, *supra*, 69 Cal.App.5th at p. 153; *Schuster*, *supra*, 127 Cal.App.4th at pp. 311-312.) The injury to Blum—being left with "worthless" stocks—was incidental to the corporation's injury. (See *Avikian*, *supra*, 98 Cal.App.4th at p. 1116 [holding that the "loss in value of [the plaintiffs'] investments" due to corporate mismanagement was "merely incidental to the alleged harm inflicted upon [the corporation] *and all its shareholders*."])

The only other injury to which the complaint alludes is that, as a result of Markusic's actions, Blum failed to gain a valuable ownership interest in New Firefly, which is the basis of the holder's action he seeks to assert. But as we have explained, the complaint fails to state a direct holder's action.

14

Because Blum's Unfair Competition Law cause of action is predicated on the same underlying causes discussed above, it too is derivative.  (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185.)

In sum, under California law, to the extent they are legally sufficient, Blum's causes of action are derivative.

**2.**

Our conclusion is no different under Delaware law.

To distinguish between direct and derivative stockholder claims, including claims based on corporate fiduciary duty, Delaware courts apply a two-part test under *Tooley*, *supra*, 845 A.2d 1031.  (See *In re Fairpoint Ins. Coverage Appeals* (Del. 2023) 311 A.3d 760, 767 (*Fairpoint*); *Brookfield Asset Mgmt. v. Rosson* (Del. 2021) 261 A.3d 1251, 1262-1263 (*Brookfield*); *Morris v. Spectra Energy Partners (DE) GP, LP* (Del. 2021) 246 A.3d 121, 130-131 (*Morris*).)  Under *Tooley*, whether a claim is derivative turns on two questions: (1) whether the corporation or the individual stockholder suffered the alleged harm; and (2) whether the corporation or the individual stockholder would receive the benefit of any recovery.  (*Fairpoint*, at pp. 767-768; *Brookfield*, at p. 1263; *Tooley*, at pp. 1036, 1039.)  The answer to the second question "should logically follow" from the answer to the first.  (*Tooley*, at p. 1036.)  In answering these questions, we look to the complaint and consider the nature of the alleged wrong and the requested relief.  (*Ibid*.)  A derivative action is one seeking to redress "harm done to the business entity, with any recovery going to the entity."  (*Fairpoint*, at p. 768.)  In contrast, the claim is direct if " 'the duty breached was owed to the stockholder' " and the stockholder " 'can prevail without showing an injury to the corporation.' "  (*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff* (Del. 2016) 152 A.3d 1248, 1260 (*El Paso Pipeline*); see also *Brookfield*, at p. 1263.)

15

For example, a claim that a corporation's funds have been wrongfully dissipated is derivative because the wrongdoing harms the corporation directly and " 'harms the stockholders only derivatively so far as their stock loses value.' " (*El Paso Pipeline*, *supra*, 152 A.3d at p. 1266.) Similarly, a claim that corporate mismanagement diminished the company's stock value is derivative because it is a wrong "shared collectively by all the shareholders, rather than independently by . . . any . . . individual shareholder." (*Kramer v. Western Pacific Industries, Inc.* (Del. 1988) 546 A.2d 348, 353 (*Kramer*); see also *Tooley*, *supra*, 845 A.2d at p. 1038.) A claim alleging that company management issued shares to a controlling stockholder for inadequate consideration is also derivative because the wrongdoing constitutes "harm to the corporation for which it has a claim to compel the restoration of the value of the overpayment." (*Brookfield*, *supra*, 261 A.3d at p. 1266; see also *El Paso Pipeline*, at pp. 1260-1261.) On the other hand, a claim by creditors that a company fraudulently transferred its assets to defraud its creditors is a direct claim "because the creditors suffered the harm caused by the fraudulent transfer, and the remedy benefits the creditors, not the business entity." (*Fairpoint*, *supra,* 311 A.3d at p. 768.)

As Blum contends, however, some cases of the Delaware Supreme Court have stated that, before applying *Tooley*, courts should ask an "initial question": is the plaintiff asserting a claim based on the plaintiff's own right, rather than enforcing a right that belongs to the corporation itself? (See *NAF Holdings, LLC v. Li Fung (Trading) Ltd.* (Del. 2015) 118 A.3d 175, 180 (*NAF Holdings*); see also *El Paso Pipeline*, *supra*, 152 A.3d at p. 1259; *Citigroup Inc. v. AHW Inv. P'ship* (Del. 2016) 140 A.3d 1125, 1127 (*Citigroup*).) If "a plaintiff asserts a claim based upon the plaintiff's own right," the claim is direct and *Tooley* does not apply. (*El Paso Pipeline*, at p. 1259; see also *Citigroup*, at p. 1127.)

16

More recently, however, the Delaware Supreme Court has reaffirmed that the *Tooley* test applies to "the determination of whether a stockholder's claim is direct or derivative." (*Brookfield*, *supra*, 261 A.3d at p. 1263; see also *Morris*, *supra*, 246 A.3d at pp. 130-131 [describing *Tooley*'s "two-part test for drawing a line between direct and derivative claims"]; *Fairpoint*, *supra*, 311 A.3d at p. 767 [explaining that *Tooley* "instruct[s] on how to distinguish direct from derivative claims"].) In addition to claims based on corporate fiduciary duty, Delaware courts have since applied *Tooley* to assess whether fraud claims were derivative or direct, without separately asking the "initial question" posed in earlier cases like *NAF Holdings, supra*, 118 A.3d at page 180, and *Citigroup, supra*, 140 A.3d at page 1127. (See *Fairpoint*, at pp. 767-768 [applying *Tooley* to assess fraudulent conveyance claim; *In re Massey Energy Co. Derivative & Class Action Litig.* (Del. Ch. 2017) 160 A.3d 484, 488, 501-503 (*Massey*) [applying *Tooley* to determine whether a claim for fraud in connection with a merger is direct or derivative].)

Applying *Tooley* to Blum's claims for breach of fiduciary duty and fraud (see *Fairpoint*, *supra*, 311 A.3d at pp. 767-768; *El Paso Pipeline*, *supra*, 152 A.3d at p. 1259; *Massey*, *supra*, 160 A.3d at pp. 501-503), they are classic derivative claims. As we have discussed, they are premised upon corporate malfeasance and mismanagement that injured Original Firefly and diminished the value of its stock. (*See Kramer*, *supra,* 546 A.2d at p. 353; *Tooley*, *supra*, 845 A.2d at p. 1038.) The duty "to manage the affairs of [the company] . . . was owed to the [c]ompany and not any stockholder individually, and the harm that allegedly resulted was to the [c]ompany and not any stockholder separately." (*Massey*, at pp. 505-506.) Any recovery would be owed to the corporation and benefit its stockholders only indirectly. (*Id*. at p. 503; see also *El Paso Pipeline*, *supra*, 152 A.3d at p. 1261 [" 'Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their

17

ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature.' "].)

Further, although Blum argues that his claims of fraud in connection with the purchase or sale of stock are not derivative, as we have already explained, his fraudulent inducement and holder allegations are not sufficient to state a claim.

For the reasons explained above, Blum's Unfair Competition Law cause of action is likewise derivative.

In sum, there is no conflict of law for us to resolve: we agree with the trial court that under both California and Delaware law, Blum's claims, to the extent they are sufficiently pled, are derivative rather than direct. (See *Grosset*, *supra*, 42 Cal.4th at p. 1107.) Because Blum lacked standing to bring a derivative action, we affirm the trial court's judgment.

## C.

Finally, Blum argues that the trial court abused its discretion in denying him leave to amend his complaint. Based on Blum's representations at oral argument, we will direct the trial court to grant leave to amend.

The grant or denial of a motion for leave to amend a complaint is generally entrusted to the trial court's discretion. (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242 (*Branick*); Code Civ. Proc., § 473, subd. (a)(1).) However, leave to amend may be granted on appeal, even if the appellant did not request leave in the trial court and even if the appellant advances an eleventh-hour legal theory. (See Code Civ. Proc., § 472c, subd. (a); *Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 411 (*Eghtesad*); *Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 684, fn. 5; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386-1387 (*Careau*).) It is the plaintiff's burden to show a reasonable possibility that any defect in the complaint

can be cured through amendment.  (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

It is true that Blum has had multiple opportunities to amend his complaint, as his operative complaint is the fourth version.  From our review of the record, however, it appears that Blum did not advance his holder's theory until his opposition to the demurrer to the instant complaint.  As a result, although we agree with the trial court that Blum's attempts to plead a direct holder action are inadequate, we believe he should be given the opportunity to try again, particularly given the representations he has made to this court about allegations he would add.  (See *Careau, supra*, 222 Cal.App.3d at p. 1405 [holding that leave to amend was required where the plaintiffs had first asserted the claim at issue in their operative second amended complaint, and were therefore never given an opportunity to cure the specific defects identified by the court].)  At oral argument, Blum asserted that, given the opportunity, he would amend his complaint to allege that he would have accepted the offer to exchange his shares for an interest in New Firefly, despite the significant flaws in the offer, if he had known Markusic's real intentions.  (See *Eghtesad, supra*, 51 Cal.App.5th at p. 414 ["an appellant may rely on statements made for the first time on appeal to show that there is a reasonable possibility that the complaint can be amended to state a cause of action"]; *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1043 [concluding plaintiff should be granted leave to amend her first amended complaint based in part on her representations at oral argument].)  Although we cannot (and do not) say that Blum will be successful, we conclude that he should be permitted to try again.  We will direct the trial court to allow a further amendment.

In contrast, with respect to Blum's claim that Markusic fraudulently induced him to make his initial investment in

19

Original Firefly, it is not reasonably possible to cure the defects in his pleading. The complaint's allegations indicating that, under Markusic's leadership, Original Firefly developed into a successful startup from 2014 to 2016 undercut any notion that Markusic had no intent to keep his initial promises when he first made them.

## DISPOSITION

The judgment of dismissal is reversed. The matter is remanded with instructions to vacate the order sustaining the demurrer without leave to amend and to enter a new order sustaining the demurrer with leave for Blum to amend his complaint to allege a holder's cause of action. The parties shall bear their own costs on appeal.


BURNS, J.

WE CONCUR:


JACKSON, P. J.
CHOU, J.

*Blum et al. v. Markusic et al.* (A171727)